SCHLICHT HEAT, LIGHT & POWER CO. v. ÆOLIPYLE CO.*

(Circuit Court, S. D. New York.    August 4, 1902.)

1. PATENTS— VALIDITY AND INFRINGEMENT — METHOD AND APPARATUS FOR PRODUCING COMBUSTION.

The Schlicht patents, Nos. 556,280, 556,282, 556,283, and 556,285, all relating to an improved method of producing combustion, and apparatus therefor, as to the method shown and the apparatus in general were not anticipated, and are valid, although many of the claims are mere repetitions of others, with no distinction between them in a patentable sense. Claims 5, 6, and 13 of No. 556,280, which is the primary patent, claim 2 of No. 556,282, and claim 1 of No. 556,283, are for that reason invalid. Claims 3, 4, 8, 10, 12, 14, and 22 of No. 556,280, and claim 1 of No. 556,282, *held* infringed by the device of defendant, when located in use at a substantial distance from the combustion chamber.    Claims 1 and 2 of No. 556,285, as limited by the prior patents, *held* not infringed.

In Equity.    Suit for infringement of letters patent Nos. 556,280, 556,282, 556,283, and 556,285, all relating to a method of producing combustion, and apparatus therefor, granted to Paul J. Schlicht.    On final hearing.

Robert N. Kenyon and Pennington Halsted, for complainant.

Frederic H. Betts, James R. Sheffield, and James J. Cosgrove, for defendant.

COXE, Circuit Judge.    This is an action to restrain the infringement of four letters patent, numbered, respectively, 556,280, 556,282, 556,283, and 556,285, granted to Edmund Francis Eldredge, as assignee of Paul J. Schlicht, for improvements in the art of producing combustion and apparatus therefor.

No. 556,280 is the primary patent.    It relates to an improved method of producing the greatest amount of heat or light from a given quantity of fuel and to means for making it practically effective without altering materially existing apparatus for producing combustion. Schlicht says that his method consists in causing air to flow to a combustion chamber in contact with a current of the hot products of combustion escaping therefrom and flowing in an opposite direction, whereby the air is heated and its rate of flow retarded before it reaches the combustion chamber, the quantity of air fed to the combustion chamber being regulated according to its needs.    This result is accomplished by means of a deflector placed in a chimney or flue whereby the air is introduced and given an initial flow towards the combustion chamber.    The invention in all its details is based upon the discovery "that a current of air and a current of combustion products will flow in contact without any substantial intermingling, and that if a current of air is properly introduced into a chimney or flue through which hot products of combustion are escaping the current of air will flow to the place of combustion in a direction opposite to that of the current of products."    The specification describes and the drawings illustrate various devices for causing the downward or inward flow of air.    Different forms of deflectors are described but they are always located at or near the top of a tall chimney or stack so that the air

* For opinion on motion to modify, see 117 Fed. 1003.

current when once established will maintain itself and during its extended passage will absorb heat from the escaping products of combustion until it reaches the fire chamber in a heated state.

The specification says:

"In practice the air will usually be admitted at or near the top of the flue; but its admission is not necessarily limited to this position. The advantage of introducing the air at the top of the flue is that the current of air is subjected to the action of hot gases throughout its entire length, and thus its temperature is raised much higher than would be possible if it were introduced at a lower point."

The essence of the invention is the continuous flow in contact, through a chimney or flue, of the oppositely moving currents for a considerable distance, sufficient, at least, to maintain each current in a substantially distinct condition during its journey to and from the combustion chamber. It is clear, therefore, that the introduction of the air at a point where it passes directly to the combustion chamber or at a point where it enters a short and tortuous passage in which the maintenance of separate currents is doubtful, if not impossible, will not be an infringement of the Schlicht method.

The claims alleged to be infringed are numbered 3, 4, 5, 6, 8, 10, 12, 13, 14, and 22.

The third claim is as follows:

"The improvement in the art of producing combustion which consists in causing a supporter of combustion to flow to a place of combustion in contact with a current of products of combustion flowing in a direction opposite to that in which the supporter of combustion is moving, said contact continuing throughout a substantial part of the length of said current of products of combustion, substantially as set forth."

The claim uses the indefinite article in referring to the fire chamber, intending to cover a structure where the air is carried to a different fire chamber from the one that furnishes the hot products of combustion; in this respect the claim differs from the fourth claim which is intended to cover an apparatus where the air current is carried to the same chamber from which the products of combustion are escaping.

The other claims, with slight verbal differences, are repetitions of the third claim, the design apparently being to cover every shade and shadow of distinction based upon the kind of fuel used, the character of the supporter of combustion, whether air or some other fluid, the manner of feeding it to the fire chamber by gravity or otherwise and various other unimportant details. The specification contains 4,300 words of description and 22 claims. When it is remembered that it relates to a process which is carried out by the simple expedient to placing a deflector or damper in a flue in such a manner that the entering air is given an initial push towards the fire pot, the court may, especially in the month of August, be pardoned for suggesting that the inventor might, perhaps, have omitted a word or two here and there, and still have made clear his contribution to the art.

Patent No. 556,282 relates to an apparatus for carrying out the method of producing combustion described in the fundamental patent. This apparatus, so far as it is now in controversy, consists of a jacket so arranged as to heat the air before it enters the chimney proper.

After the air is heated by passing between the jacket and the outer wall of the chimney it reaches the deflector and is, directed down the chimney to the combustion chamber.

Claims 1 and 2 are involved.

Claim 1 is as follows:

"The combination with a chimney or stack of means for causing a current of air to move downward within said chimney or stack in contact with the products of combustion, and an air-heating device adapted to receive heat from the combustion products within the chimney or stack and to deliver heated air to said means, substantially as set forth."

Claim 2 differs from claim 1 by the substitution of the words "means for initiating a downwardly moving current of air" for the words "means for causing a current of air to move downward."

Patent No. 556,283, relates to another form of apparatus for carrying out the Schlicht method and consists of an air inlet pipe, which is sufficiently described in the only claim involved, which is as follows:

"The combination with a chimney or stack of an air-inlet pipe extending into the chimney or stack and adapted to introduce a current of air and direct it towards the place of combustion, substantially as set forth."

Patent No. 556,285, so far as the same is in controversy, is intended to cover the Schlicht device in every variety of size and shape as "a new article of manufacture."

Claims 1 and 2 are involved; they are substantially similar.

Claim 1 is as follows:

"As a new article of manufacture, a chimney attachment provided with means for causing a current of air to flow downward within a chimney or flue, substantially as set forth."

The title of the complainant to these patents and its right to sue is sufficiently established.

The defenses are noninfringement and invalidity of the patents by reason of anticipation, lack of patentability and the inoperative character of the apparatus described and shown. So far as the record discloses the prior art, Schlicht was the first to discover that a current of air can be introduced at or near the top of a furnace chimney and made to flow downward to the combustion chamber, in direct contact with a current of the hot products of combustion flowing in an opposite direction, and delivered, as a supporter of combustion, in a heated condition above, instead of below, the fire bed. Schlicht states that he was the first to apply this process to lamp chimneys, but in this he is in error, for the proof shows that several years prior to his invention an experiment was made which demonstrated the success of the method when limited to lamps. The court cannot, however, regard this as an anticipation of the invention as applied to stoves and furnaces for producing heat and power. Assuming the information contained in the "Elementary Lessons" to be substantially that of the patent as applied to lamps, it by no means follows that the patent is invalid in its application to furnaces. It required the exercise of the inventive faculty to adapt the knowledge imparted by "Experiment 61" of the book in question, to produce the important and paramount results referred to in the specification of the Schlicht patent. If the patentee,

in his anxiety to expand his patent to cover not only the entire field but adjacent fields, has attempted to seize more than he is entitled to it is no reason why he should be evicted from premises which are clearly his own. The simple experiment referred to would not have suggested to a mechanic the application of the principle thus demonstrated to furnaces, and even if it had done so he would not have known how to apply it. To construct a comprehensive and successful system of heating from a rudimentary apparatus consisting of a candle, lamp glass, cigar and piece of cardboard, requires an exercise of inventive skill. The best reference of the defendant is the patent granted to Howard, in 1887, for a "smoke and gas consuming attachment for stoves and furnaces." The device is placed at or near the smoke collar of the stove or furnace and is designed to aid combustion and consume smoke and gas by the introduction of atmospheric air to the fire chamber. The air is drawn into the smoke pipe through an opening at the bottom of the pipe and, being cold and heavier than the gases generated by combustion, it passes along below the gases until it is heated to the proper degree, "when the oxygen of the atmospheric air will mix and unite with the heated gases, making them highly combustible and causing them to burst into flame." "In this manner," says the specification, "no gases or smoke can leave the fuel chamber and pass the pending partition or diaphragm F without utilizing fully their combustible qualities, and the carbon gases, that by condensation form soot on the walls of the pipe and chimney, are entirely consumed, and therefore a great saving of fuel is the result of my device and arrangement." This device does not anticipate, but it certainly prevents a very broad construction of the claims of the Schlicht patents.

It is urged that the Howard apparatus is inoperative, an argument frequently resorted to and maintained with great ingenuity and learning, when a prior patent encroaches dangerously upon the invention under consideration. The court is convinced, however, that the Howard apparatus will operate to a certain extent in a more limited field than the Schlicht method, but upon a somewhat different principle. There is always a presumption that a patented device is operative. The long-continued flow of separate, oppositely moving, parallel currents in contact, and the gradual heating of the downwardly flowing air cannot be accomplished by the Howard structure. The air is delivered too near the combustion chamber of the stove, or the labyrinthian radiator of the furnace, to permit the accomplishment of the essential results achieved by the Schlicht method. As stated in complainant's brief:

"It is the very essence of the Schlicht invention, that the contact between the outflowing products of combustion and the inflowing air should be for a substantial distance, otherwise the inflowing air would not be heated, and none of the objects or advantages of the Schlicht invention would be realized. This idea is particularly emphasized in the patents."

This is a clear and correct statement of the distinguishing feature of the invention and it seems quite plain that the Howard patent does not disclose it.

It is unnecessary to examine the other patents and publications, as none of them describes the Schlicht method and apparatus as above

explained and limited. That the Schlicht devices will operate has been established practically and experimentally. That the defendant has infringed some of the claims cannot be doubted. This is proved by the direct admissions in the circulars issued by the defendant, by the use of the "æolipyle" of the defendant upon the pipe of the stove in the office of Ray, Daisley & Co., and by the experiments of Dr. Morton, Prof. Hutton and Mr. Kennedy with the apparatus illustrated by complainant's "Exhibits 34, 25 and 38." In these instances the "æolipyle" was placed several feet from the combustion chamber and the observed phenomena indicated that the Schlicht method was employed. The defendant's experiments on the other hand seem to establish, at least, the proposition that when the device is placed in close proximity to the combustion chamber a downward current cannot be established and that the entering air is caught and whirled upward and backward by the opposing current of the products of combustion.

The admissions of the defendant through its circulars and otherwise cannot be ignored. Such admissions may be insufficient to establish the validity of a patent, but upon the question of infringement they are exceedingly persuasive. These circulars state that with the use of the "æolipyle" the maintenance of a good fire does not depend upon air through the grate, the holes in the side of the "æolipyle" supplying all the draft necessary for the fire at all times, the heated air being supplied to the gases of the combustion chamber causing them to burn and produce increased heat. In short, most of the statements of these circulars are as applicable to the complainant's apparatus as to that of the defendant.

There is little difficulty in finding infringement when the defendant's device is placed at a substantial distance from the fire chamber, but the court is equally clear in the conviction that when placed in close proximity thereto there is no infringement. It was admitted at the argument that an "æolipyle" placed on the smoke collar of a stove would not infringe, but it is argued that if placed on the smoke collar of a furnace it will infringe. This contention is based upon the theory that as the air after being introduced has to traverse a maze of complicated apertures and channels, known as the radiator, the currents of the Schlicht method can there be established. The court is unable to accept this view. It is practically impossible to use the "æolipyle" inside the radiator or even inside the furnace casing. The smoke collar is the nearest point where it can be applied and, if the complainant's contention be correct, it will not only prohibit the use, in connection with furnaces, of the defendant's device, but of all other devices for the introduction of air into the pipe in the direction of the fire chamber, even though the device be placed as near the fire pot as it is possible to locate it.

If there be any clear testimony that the contact between the two distinct currents moving in opposite directions for a substantial distance, which is "the very essence of the Schlicht invention," can be initiated and maintained in the radiator of a furnace, the court has failed to discover it. If it be possible for such a condition to exist it was the

duty of the complainant to establish it. That such testimony can be adduced is doubtful. It would seem that a furnace radiator, with its channels, chambers and vents; with its currents, cross-currents and eddies, mingling and whirling in every direction and all adapted to mix, tangle and vex an entering current of fresh air, would be the last place selected to segregate the air and conduct it in a separate stream to the fire bed. For these reasons the court is convinced that the defendant's device when placed at the smoke collar of a furnace or stove, or within six inches therefrom, is not an infringement.

It remains to consider the various claims in issue, as it is asserted, even conceding the validity of some of the claims, that several others are invalid and that others still are not infringed. That there is a needless multiplication of claims has already been intimated.

Claim 5 of No. 556,280 is not distinguishable in a patentable sense from claim 4. "Igneous fuel" means fuel having the nature of fire, or fuel on fire or in a state of combustion. To cause air to flow to "igneous fuel" is, therefore, to cause it to flow to a place of combustion. The two are identical. Various other synonyms for "place of combustion" might be suggested, but patents are not granted for ingenuity in the discovery of words.

Claim 6 is open to the same criticism; it substitutes the word "air" for "supporter of combustion," but in view of the statements of the specification and of the record there is nothing patentable in the change.

The complainant's expert says:

"Claim 13, as I understand it, only differs from claim 12 in so far as it emphasizes the employment of gravity as a means for feeding in the air."

As there is no hint in the patent of the employment of any other force and as the employment of gravity is sufficiently "emphasized" in claim 8 there is no necessity for claim 13. Gravity, and every means shown in the patent for feeding by gravity, are clearly covered by other claims.

The other claims of this patent are, perhaps, open to similar objections, but, when confined to the devices shown, or their equivalents, it is thought that they may be sustained.

It is thought that patent No. 556,282 may be upheld for the peculiar preheating devices shown and that the "æolipyle" if located at a substantial distance from the combustion chamber, infringes the claims involved which, however, are substantially alike.

The first claim of patent No. 556,283 is invalid because the identical device is covered by the primary patent and particularly by claims 14 and 19 thereof.

Claims 1 and 2 of patent No. 556,285, unless strictly limited to the devices described and shown as separate attachable structures, are void, as the same apparatus, substantially, is protected by the claims of patent No. 556,280. If so limited they are not infringed.

The evident purpose of the patentee was to cover his various devices as separate articles of manufacture so that they could not be sold in the market without infringing. A purchaser could, however, go to a licensed dealer, select the desired deflector and attach it to his

chimney in the manner described. The "æolipyle" is not a chimney attachment in this sense.

It follows that the complainant is entitled to a decree, in accordance with the views thus expressed, for an injunction and an accounting, but without costs.