## LINVILLE et al. v. MILBERGER.

District Court D. Kansas. First Division.
October 1, 1928.

No. 883–N.

Toulmin & Toulmin, of Dayton, Ohio, for plaintiff.

Fisher, Clapp, Soans & Pond, of Chicago, Ill., for defendant.

McDERMOTT, District Judge. This action is one for infringement of letters patent, in which an injunction and an accounting, with treble damages, are asked; there are also allegations of unfair trade, for which damages are asked. The accounting and the issue as to unfair trade were reserved until the underlying question of the validity of the patent is determined. The defenses are the usual ones of noninfringement and lack of patentability. A trial was had to the court. The case has been exhaustively and capably briefed, and now comes on for decision.

No time need be spent on several matters; except for a difference in the construction of the end thrust bearing, the infringement is complete and aggravated, if the patent is valid. The real defendant herein, the J. I. Case Threshing Machine Company, invited the patentee to bring his plow to its plant for inspection, holding out a possible license contract as an inducement; the patentee, a farmer, came with his plow; the company kept his plow long enough to copy it, and then the negotiations for a contract proved unsuccessful. The engineer for the company testified that there was no practical difference in the two plows. The usefulness

of the Angell plow is attested, not only by its immediate commercial success, but by its aggressive and widespread imitation by farm implement companies generally. There is but one debatable question in the case: Is Angell's patent any good?

### Statement of Facts.

The patentee, Charlie J. Angell, was a practical Western Kansas wheat farmer. He was struggling with the problem of raising wheat in that dry and resisting section. There were three elements of the problem of preparing the ground for the seeding: (1) The cost of the old method of using an old-fashioned or mold-board plow or gang, cutting 16 or 32 inches, followed by a disc and harrow, was more than the probability of a 15-bushel to the acre crop would justify; (2) that method left air pockets that absorbed the slender rainfall, for Campbell had long ago demonstrated that dry farming required a compact and uniform seed bed to retain the moisture; (3) that method pulverized the surface so well that the spring winds would blow the surface, wheat and all, into Nebraska.

Angell, probably without any actual knowledge of the art, struck upon the idea of making the old one-way disc harrow or cultivator a little heavier, with larger discs, arranging the wheels to accommodate the greater swerving in heavier going, put in an end-thrust bearing to take up the greater side thrust of the discs, built a plow, tried it out, and it worked. He had a better seed bed than that made by the old method, because the surface was not pulverized and would not blow away; there were no air pockets in the soil; and the stubble could be prepared for seeding by going over the field once or twice with a plow of a 10-foot, instead of a 16-inch cut. Since a mold-board plow must be followed by a disc or harrow, it really did away with the expense of plowing. A rough sketch will show its essential features:

The coming of the cheap tractor furnished the power of eight horses which otherwise would be required. His neighbors saw it, liked it, and asked him to make one for them. Its success continued, and word came to the Case Company and others; in 1927 the Case Company and others copied it; in the spring of 1927 the Ohio Cultivator undertook its manufacture under a fair license contract; and this is the first action to test the validity of the patent, and, if good, to stop the depredations that are going on.

Angell's application for a patent had a stormy passage through the Patent Office. Without tracing its history in detail, it is sufficient to say that his first application was filed March 29, 1924; on February 5, 1926, two claims out of eight applied for were allowed as "an improvement in adjustable wheel mountings for disc harrows or plows." The Grant patent, referred to hereafter, was cited and considered. This application was forfeited and abandoned. On March 19, 1925, an application was made for an improvement in thrust bearings for such plows. On October 27, 1925, all the claims were rejected, and the application abandoned. On May 11, 1926, the application for "improvement in one-way disc plows," which ripened into the patent in suit, was filed; a vigorous correspondence was had, and the claims amended and changed many times. McKay patent, hereafter referred to, was cited and considered. The four claims here relied on, and as finally allowed, are copied in the margin.[1]

---

[1] I claim:
1. In a disk plow, the combination with a general frame, of a three-point adjustable support, one support near the forward right-hand end, one near the rear left-hand end and one at the left side intermediate of the front and rear ends, a series of disks and an axial support therefor connected to the frame, and to which the disks are secured, such disks being substantially perpendicular to the horizontal and such axial support at an angle to the line of draft, and a thrust-bearing in line with the shaft.
2. In a disk plow, the combination with a general frame, of a three-point adjustable support, one support near the forward right-hand end, one near the rear left-hand end and one at the left side intermediate of the front and rear ends, a disk shaft and a series of disks secured thereto and positioned at an angle to the line of draft and located generally between the right-hand forward and the left-hand rear adjustable supports and rearward of the left-hand forward adjustable support, and a suitable thrust-resisting mounting for said shaft arranged in line therewith.
4. In a disk plow, the combination with a main frame, a shaft, a series of supporting bearings, and a thrust bearing in line with the shaft, all

## Presumptions.

From the above statement it will be seen that many presumptions exist in favor of the plaintiffs' position. There is a presumption of validity that follows the action of the Patent Office, and the burden is strongly on the defendant to overcome it. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; San Francisco Cornice v. Beyrle (C. C. A.) 195 F. 516. In case of doubt, a construction should be given that vitalizes, rather than one which vitiates. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A.) 106 F. 693, 701.[2] There is a presumption that follows such commercial success as followed the putting of this plow on the market. The immediate mental reaction properly is: "If this wasn't new and useful, how do you explain its popularity with those who buy and use them?" In the Brake-Beam Case, Judge Sanborn said:

"These facts establish neither the novelty nor the patentability of his device, but they certainly challenge admiration, and demand that the presumption of validity which supports his patents shall not be stricken down without careful consideration and cogent and convincing proof. The keen, shrewd, mercantile spirit of this age is seldom deceived into the purchase and continued use of worthless improvements in mechanical devices, and, when all is said, success is by no means the poorest criterion by which to judge of the acts and words of men." Page 697.

---

carried by the frame, of a series of disks on said shaft, said shaft having an angular cross section to interlock rotably with all the disks. the position of such shaft being at an angle to the draft line of the machine; whereby through the thrust bearing lateral thrust or pressure of the shaft is resisted and whereby through the angular relation of the shaft and disks all of the disks are interlocked equally with the shaft.
5. In a disk plow, the combination with a general frame, draft devices and ground wheels to resist lateral swerving of the machine, of a disk shaft mounted in journals connected with the frame at an angle to the line of draft, a series of disks rigidly mounted thereon with the active cultivating segment of each succeeding disk overlapping said segment of the preceding disk, and with the forward face of each disk substantially vertical or perpendicular to the surface, whereby the whole surface of the swath covered by the machine is cultivated and a homogeneous seed bed is produced without chasms due to clods.

[2] This case will be cited many times in this opinion and for brevity, will be called "the Brake-Beam Case" and the page of the quotation given. The law announced by Judge Sanborn has been followed in this circuit for more than a quarter of a century, and it is commonly referred to as a text-book on patent law.

See, also, Acme Co. v. Oil Well Imp. Co., 2 F.(2d) 530 (8 C. C. A.).

The widespread and close imitation of the Angell plow adds to the force of these presumptions. "That there was invention is evidenced and emphasized * * * by the fact that the defendant has appropriated bodily the substantial structure of the Borsch patent"—the language of Judge Van Valkenburgh in Kryptok Co. v. Stead Lens Co (D. C.) 207 F. 85. Likewise, the fulsome claim of novelty in the Case Company advertising matter is some evidence of the truth of plaintiffs' present claim. Schlicht Heat, Light & Power Co. v. Aeolipyle Co. (C. C.) 117 F. 299; Blount v. Société (C. C. A.) 53 F. 98.

The fact that the two patents, Grant and McKay, relied on by defendant as anticipations, were both considered by the Patent Office, strengthens the presumption of validity, particularly as against those patents. Elkon Works v. Welworth (D. C.) 25 F.(2d) 968. The action of the administrative arm of the government should not be overturned, except for clear and cogent reasons. In addition to all of this, whatever weight, if any, is accorded what are sometimes called the rough equities of the case, helps the plaintiffs.

But can a patent be sustained on presumptions alone? The statute provides that patents may be granted to those who have invented a "new and useful * * * machine," which was "not known or used by others, * * * and not patented or described in any printed publication in this or any foreign country" before his invention, with some other limitations. Can the presumptions mentioned relieve a court from the duty of inquiring into the validity of a patent? It seems not.

The Supreme Court of the United States has held that, even if the question of patentability is ignored by the parties, "neither the Circuit Court nor this court can overlook the question of patentability." Hill v. Wooster, 132 U. S. 693, 10 S. Ct. 228, 33 L. Ed. 502. Judge Sanborn, in the Brake-Beam Case, said: "It is true that the extensive use of a machine or combination which is clearly without novelty does not dispense with that statutory requirement, and that it will not alone sustain a patent." 106 F. at page 707. And Judge Van Valkenburgh, in the Kryptok Case, supra, that "great utility and extensive use will not alone sustain a patent." Judge Adams, speaking for our Circuit Court of Appeals, said such evidence "is most appropriately resorted to in cases where that issue is in grave doubt." Torrey v. Hancock, 184

F. 61. Our court has also said that such evidence is "entitled to consideration, on that issue [invention], only in doubtful cases." Western Willite Co. v. Trinidad Asphalt Co., 16 F.(2d) 446.

From these authorities it is clear that the duty of inquiring into the patentability of this plow cannot be escaped. It resolves into two questions: (1) Considering the state of the prior art, was there invention? (2) Was the patent anticipated by references pleaded in the answer? The plaintiffs have briefed these questions with little regard to the claims of their patent—have rather pointed out differences between their plow, as constructed, and earlier plows. The defendant has met them on this ground, and counterattacked by pointing out that none of the novel points claimed at the trial were claimed in the patent. This opinion will deal first with the differences in the plows claimed at the trial, and will then deal briefly with the scope of the claims of the patent.

### The Prior Art.

From the evidence, disregarding certain foreign catalogues, which I have concluded are not competent, it is clear that plows with three-point supports are as old as riding plows themselves; these riding plows had three wheels, one in the last furrow plowed, one on the new land, and one behind in the new furrow. The use of discs, both one-way and two-way, to turn the soil, is old, both as cultivators and plows. Setting the gang at an angle to the line of draft is old. The principal claims of novelty made by the plaintiffs are: (1) An improved seed bed. (2) Three hand lever adjustments. (3) A square axle. (4) Location of wheels, and particularly the land wheel, or "co-ordination." (5) Overlapping discs. (6) End-thrust bearing. (7) As a combination.

1. The production of a seed bed is a function and not a machine, and is not in itself patentable. In the Brake-Beam Case it is said: "Now, the function or result of the operation of a machine or combination is not patentable under our laws, and therefore the camber in the beam could not be monopolized by means of a patent. The means, the mechanical device, by which that camber was produced and that alone, was capable of protection by such a franchise." 106 F. at page 708. To the same effect, see Denning v. American Steel & Wire Co., 169 F. 793 (8th C. C. A.).

The converse of the rule is that an inventor is entitled to any function or use to which his machine may be adopted, whether he con-

614

templated such use or not. In the Brake-Beam Case, it is ruled: "An inventor is not called upon to state in his specification or claims for a patent all the functions of his device, or all the uses to which his invention may be put. When he has plainly described and claimed his machine or combination, and has secured a patent for it, he has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether or not he was aware of all these uses or methods of use when he claimed and secured his monopoly." 106 F. at page 709. See, to same effect, O'Brien-Worthen Co. v. Stempel, 209 F. 847 (8th C. C. A.).

However, the short answer to this claim is found in the words of the Examiner of the Patent Office, who declined to allow certain contentions of the applicant concerning the seed bed, by saying: "They [drawings of seed bed] merely show how any ordinary disc plow or disc harrow cuts the soil." Of course this is true. Any gang of discs, running through the soil at the same angle and at the same depth, will produce the same seed bed. Neither plaintiff's patent, his expert, nor his solicitors, limits the machine to any size disc, to any depth of cutting, nor any angle of draft, except the wide range of 20° to 60°. Similarly, there were no such limitations in the earlier patents.

2. Each of the three wheels of the plaintiffs' plow has a hand lever for raising or lowering the gang of discs. Although the references are not altogether clear in this respect, it is probable that the hand lever on the rear wheel is new. It is, moreover, not claimed in the patent, other than by the general word "adjustable." But in Cox, Grant, McKay, and others all three points were adjustable, two of them by hand levers, and the third by a cotter pin or other familiar means of adjustment. By actual view and test, it is clear that the disc gang on the earlier plows and on plaintiffs' can be raised two or more inches from the surface, or lowered six inches into the ground, without using the rear adjustment at all. This on the principal of the fulcrum; of course, the closer the front wheel adjustment is to the gang, the higher that lever will raise the gang; with the hand lever adjustment on the rear, the gang can be raised or lowered somewhat more than if that point is a fixed fulcrum. But in the prior plows the third point of adjustment existed, the hand lever being the only new point. The third hand lever may be a convenience, although, since the driver must leave the tractor to make any adjustment, and since the occasion for making the third adjustment is limited to the unusual case where an exceptional change is desired, it is doubtful whether it is of particular value. However, I can see no trace of inventive genius in using a third hand lever where two were in existence for years. Even the most obtuse man, with two hand levers on two wheels, would think of a hand lever in connection with the third, if more ready adjustment were desired. In the Brake-Beam Case, it was held:

"The moment the want of this limitation is felt, projections on the jaws or flanges naturally occur to those unskilled, as well as to those skilled, in the art, as the most obvious and appropriate means to fill the want. There can be neither discovery nor invention in applying a remedy so plain to, or in combining a contrivance so obvious with, an old mechanical device which needs it." 106 F. 723.

"The argument of counsel for the appellants is, however, that this is not a patent for a wedge, but for the new combination of a wedge with the brake beam of Hien. But it is a conclusive answer to this contention that there is no more invention in the combination of a wedge of the usual form, discharging its customary function of tightening the parts of a mechanical device, with Hien's machine, than there is in the discovery of the wedge itself and its common use for this purpose. If this were not true, every combination of an old machine with a wedge, performing the function of tightening its parts, would constitute an invention." Page 719.

That such hand lever is not necessary to the successful operation of the plow is shown by the Grant (853,510), McKay (British 8,886), Sanders, Cox, and other plows. I conclude that three-point adjustable supports, with two hand levers, were old when the plaintiff's first application was filed, and the addition of a third hand lever involved no inventive genius.

3. The discs in plaintiff's plow are set on a square axle. That was true in the Cox plow, probably true in the Grant, and certainly true in La Dow (388,567), Ruel (445,787), Sharp (1,213,281), and Bail (British 428). In any event, the use of a square axle to prevent independent revolution about the axis is an idea as old as the lever and fulcrum, and cannot be made the subject of invention.

4. Novelty is claimed because the front wheel is further forward than in Cox and Grant, leaving a larger space between the wheel and the gang axle. The larger space makes the plow less apt to clog up with weeds or stubble. If one of the older plows

clogged enough to become a nuisance, the natural remedy—in fact, the only one—is to set the wheel further forward. Setting the wheel forward has a slight disadvantage, in that it requires a proportionately longer lift of the lever to raise the disc gang; but it is the natural solution of a simple problem, and involves nothing akin to invention.

It is also asserted that the axle line (projected) of the front wheel should come midway of the gang; or, to put it as was done on argument, the novelty lay in its "co-ordination." But that line varies, even in plaintiffs' plow, as the lever is operated. Moreover, the only advantage urged by this, or anything else concerning the location of the wheels, is to avoid side-swerving; that is, so the plow will operate. Upon examination I was unable to detect any substantial difference between plaintiffs' plow and the earlier ones in this respect. There is nothing in the claims of any of them concerning it, excepting such general terms as "intermediate of the front and rear ends," which refers to the wheel, and not its projected axle. The earlier plows worked, wherever the projected axle line of the front wheel struck the gang, and nothing else can be done by "co-ordination."

5. In the briefs it is suggested that some novelty attaches to the fact that the discs overlap. Whether they do or not depends on the angle of draft, the size of the discs, and their spacing. Plaintiffs' patent is not limited, except within wide ranges, as to any of these points; moreover, many of the earlier plows, cited in the findings, as well as the actual Cox and Grant plows examined, have overlapping discs.

6. Novelty is claimed on account of the end-thrust bearing. The claims cover "a thrust bearing in line with the shaft." Defendant asserts that, except for this point, no patent would have been issued. A separate application for an "improvement in thrust bearings for one-way disc plows" was denied. It is apparent that earlier plows had some thrust bearing in line with the shaft. Whether plaintiffs' patent is valid as to the particular form of the bearing need not be determined, for the thrust bearing of defendant's plow is quite dissimilar. If plaintiffs' patent purports to cover all thrust bearings, it is bad, for the reasons given for the square axle; if it is limited to the one kind, it is not infringed.

7. The plaintiffs assert that, in any event, the inventor has combined certain known principles into a patentable machine. In the Brake-Beam Case, Judge Sanborn said:

"Hien could not be, and was not, a pioneer in the art he illustrated, in the sense that he first conceived the principle of a brake beam, or the mode of operation of a trussed brake beam, or first devised the means of carrying those ideas into effective operation. It must be remembered, however, that an improvement of an old device or a new combination of old elements not infrequently marks a greater advance in the art and discloses a more useful invention than the conception of the original machine or a knowledge of the old elements of the combination, and that such an improvement is equally entitled with the conception of the original device to the protection of a patent. The greater part of the advance in nearly all mechanical arts consists in improvements of old devices and in new combinations of old elements, and the useful inventions which attest this progress are not to be deprived of the benefit of the patent law because they do not mark the first step in the movement. Not only the first and last, but every intermediate, step of the advance which rises to the dignity of invention, is entitled to the protection of a patent." 106 F. 697.

And in Denning Wire & Fence Co. v. American Steel & Wire Co., 169 F. 793, our Circuit Court of Appeals said: "A new combination of old elements or devices whereby a new and useful product is produced or an old product is attained in a more efficient and economical way may be protected by a patent." Page 794.

And in Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 F. 362 (8th C. C. A.) Judge Sanborn said: "It constitutes no anticipation and no defense to a claim of infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third. It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine, where they do substantially the same work by the same means." There are countless other cases to the same effect.

■ But mere aggregation is not combination. In the Brake-Beam Case, the law is stated to be: "Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements

changed is the distinguishing characteristic of the invention." 106 F. 711.

And in Western Willite Co. v. Trinidad Asphalt Co., 16 F.(2d) 446, our Circuit Court of Appeals said: "That the mere bringing together, in a new combination, of old devices or elements, especially if they belonged to the same art or to arts kindred to that to which the combination belongs, does not constitute invention is well settled. 'It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known and that it shall be useful, but it must, under the Constitution and the Statute, amount to an invention or discovery.'"

In 1924, disc plows, cutting an angle to the line of draft, mounted on a three-point support, were more than 20 years old (C. R. Davis, 786,427; W. G. Danielsen, 795,430; P. McFerson, 820,242; J. Moore, 836,773); one-way gangs of disc, cutting at a similar angle, and similarly mounted, were old (Grant, 853,510; La Dow, 304,010; Ruel, 445,787; Spalding & Robbins, 563,514; C. S. Sharp, 1,213,281; McKay, British 8,886). They were designed for the same purpose, and accomplished the same function, in essentially the same way, as plaintiffs'. Plaintiffs cannot add a third hand lever, move the front wheel a foot further forward, and call it a patentable combination, as defined by the authorities.

## Anticipation.

Although many patents are pleaded as anticipations, the defendant relies principally upon three.

The patent to Grant (853,510) covers a machine practically identical with plaintiffs', except for the third hand lever and the fact that the land wheel is somewhat closer to the gang. There is some dispute as to whether its axle is square, but the machine was designed for a gang of discs, not operating independently, and whether that result was accomplished by the familiar square axle, or a round axle with setscrews or cotter pins, is not material. Plaintiffs brush this plow aside by calling it a "cultivator." It was so named, and was designed for use after the ground had been plowed. But the authorities cited above abundantly establish the right of the inventor to other appropriate uses not within his present contemplation. There is a limitation on this, however. Again to quote from the Brake-Beam Case: "A machine or combination which is not designed by its maker, nor actually used nor apparently adapted to perform the function of a patented machine or combination, but which is discovered in a remote art and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent." 106 F. 702.

The question, then, is whether a "disc cultivator" is kindred to or remote from a "disc plow." The question is answered in Torrey v. Hancock, 184 F. 61, where our Circuit Court of Appeals cited references to "cultivator" patents in a "plow" case, and in Ford Motor Co. v. Parks (C. C. A.) 21 F. (2d) 943, our court said that a brake band applicable to a screw machine was pertinent as against one used in an automobile. The court said: "The application of an old device to a new use is not in itself a patentable invention, but it is only when the new device is so recondite and remote from that to which the old device has been applied or for which it was conceived that its application to the new use would not occur to the mind of the ordinary mechanic skilled in the art that his conception rises to the dignity of invention."

In Mallon v. Gregg, 137 F. 68, our Circuit Court of Appeals held an apparatus for unloading sugar cane was properly cited against one used for unloading coal. Disc cultivators and disc plows belong not only to kindred arts; they are parts of the same art of turning the soil.

Plaintiffs brush aside the McKay patent because the Examiner of the Patent Office cited it, because of the lack of the third hand lever and a somewhat different placing of the three wheels, and because it has an additional lever to help in the steering. But these are superficial differences. It was a machine with a gang of one-way overlapping discs, on a three-point adjustable support, designed for and useful for plowing ground, and is an anticipation of the Angell patent.

The defendant proved, by 17 farmer witnesses, that Bradford Cox made a plow almost identical with plaintiffs' in 1921, and wore it out plowing wheat stubble in Texas in the succeeding two years. This evidence is challenged on the ground that "the solemn grants of great franchises cannot be stricken down by testimony so flimsy and unsatisfactory. The memory of men is too brief and fleeting, too easily swayed by chance and by interest, to permit the recollection of one or two witnesses, prompted by presently prepared pictures of the proof desired, to condition the validity of valuable patents that have stood unchallenged for years. Unsupported oral testimony of a prior use is always open to suspicion, and it cannot pre-

vail over the legal presumption of validity which accompanies the patent, unless it is sufficient to establish such a use beyond a reasonable doubt." 106 F. 703. To the same effect are, Denning Wire & Fence Co. v. American Steel & Wire Co. (C. C. A.) 169 F. 802; Carson v. American Smelting Co. (C. C. A.) 4 F.(2d) 463 (8th C. C. A.); Stead Lens Co. v. Kryptok Co., 214 F. 368 (8th C. C. A.); Eibel v. Minnesota, 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; The Telephone Cases, 126 U. S. 1, 8 S. Ct. 778, 31 L. Ed. 863.

But no one, I believe, can read the evidence of these 17 persons, with their wealth of homely methods of fixing the dates, with checks and bank records supporting their story, with this witness spontaneously identifying one part of the plow he had fixed, and another witness another part, and have any vagrant suspicion that they are perjurers. In short, the evidence meets the exacting standards required and is supported by the appearance of the plow itself.

The plaintiffs point out the same nonessential differences between the Cox plow and theirs as they did in the Grant and McKay, and also point out that, when some of the discs of the Cox plow wore out, the new discs put in were not of uniform size.

It is also urged that it was an abandoned experiment. The fact is the plow was worn out in public use. In Brush v. Condit, 132 U. S. 39, 10 S. Ct. 1, 33 L. Ed. 251, the court held that the manufacture of one lamp, used for 2½ months, and no other one ever made, was a public use sufficient to defeat a later patent. The Bradford Cox plow is an anticipation of the claims in suit.

### The Claims of the Patent.

An examination of claims 1, 2, 4, and 5, relied on by plaintiff, discloses that none of the features urged at the trial as distinguishing plaintiffs' plow from its predecessors, and above discussed, are covered by the claims, except the thrust bearing and the overlapping discs, and, conversely, that all of the points covered by the claims, except the thrust bearing were present in such predecessors.

Bearing in mind that the distinguishing features most fairly open to argument are (1) the third hand lever and (2) the precise position of the front wheel, let us examine the claims which are set out in full in the margin, for the purpose of seeing, first, if the features now urged as distinguishing are claimed; and, second, whether every principle claimed is not present in prior plows.

Claim 1. In a disc plow, the combination with a general frame of—

(a) A three-point adjustable support, one near forward right-hand end, one near the rear left-hand end, and one at the left side, intermediate of the front and rear ends.

(b) A series of discs and "an axial support therefor."

(c) The discs substantially perpendicular.

(d) The axial support at an angle to the line of draft.

(e) A thrust bearing in line with the shaft.

Claim 2 is a paraphrase of claim 1. The disc gang is described as "located generally between the right-hand forward and the left-hand rear adjustable supports and rearward of the left-hand forward adjustable support."

Claim 4 adds to the above—

(a) A series of supporting bearings.

(b) The discs on a shaft having an angular cross-section to interlock rotably with all the discs.

Claim 5 adds to the above—

(a) Draft devices and ground wheels to resist lateral swerving.

(b) Disc shaft mounted in journals, and a series of discs rigidly mounted thereon.

(c) Overlapping discs.

(d) All of which produces a homogeneous seed bed.

The Grant and McKay patents have been carefully examined. Neither of them is limited as to the spacing or size of the discs, the location of the wheels, the angle of draft, or the manner of adjustment. The plaintiffs, in effect, undertake to confine their patent to a machine with particular features in these respects; to narrow the claims of earlier patents in the same way—and by these two unwarranted steps assert that the machines so limited are different. But the question is: Are the *claims* in the plaintiffs' patent anticipated by the *claims* in the prior ones? The following quotations from the Brake-Beam Case are pertinent:

"The description in a specification or drawing of details which are not, and are not claimed as, essential elements of a combination, is the mere pointing out of the better method of using the invention. City of Boston v. Allen, 91 F. 248, 249, 33 C. C. A. 485, 486. A reference in a claim to a letter or figure used in the drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed." 106 F. 715.

"One who appropriates a new and valu-

618

able patented combination cannot escape infringement by uniting or operating its elements by means of common mechanical devices which differ from those which are pointed out for that purpose, but which are not claimed in the patent." 106 F. 716.

█ The law is clear that the plaintiffs' claims mark the limits of his contract. Drawings and specifications may be resorted to as aids in a liberal construction, but cannot be resorted to in order to add to or subtract from his contract.

Counsel for defendant, in their brief, state the law in a figure of speech: "You may fence in a territory as wide as you have discovered, *but you must fence it in*, that the public may know where it may not trespass, and the courts cannot change your fences for you, when once they have been set. If you fence in more than your title warrants, the grant is void; if less, you must suffer the loss, for the outlying parts become the public domain."

There is no uncertainty as to the law on this point. The statute itself requires that the applicant "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." R. S. § 4888 (35 USCA § 33). The Supreme Court has said that "the claim is the measure of his right to relief" (McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800); that "it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms" (White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303). See, also, McCarty v. Lehigh Valley, 160 U. S. 115, 16 S. Ct. 240, 40 L. Ed. 358; Yale Lock Mfg. Co. v. Greenleaf, 117 U. S. 554, 6 S. Ct. 846, 29 L. Ed. 952, and countless other cases.

Moreover, the plaintiffs construed their patent in the patent itself:

"The detailed constructions here described are the ones I have employed, but it will be understood that variations from these forms of construction may be used."

"I hereby reserve for subject matter of invention and claims, embodied in a copending application, serial No. 157,562, filed December 28, 1926, the feature of so relatively positioning the line of draft of the draft devices and the axial line of the disk shaft, with a line projected substantially from the center of the forward right-hand and rear left-hand ground wheels, and another line projected from the axis of the forward left-hand wheel, that said lines will intersect one another within a prescribed zone located essentially midway, and overlapping, the disk shaft. While this feature is shown in the drawings hereof it is not claimed herein but is reserved to be covered in a separate patent expected to issue on said copending application."

The conclusion seems irresistible that the claims of the patent are anticipated by prior patents. The claims are broad, much broader than counsel for plaintiffs now assert; if the claims were limited in the particulars claimed, they could be evaded by such trifling mechanical departures that the patent would be of little or no value.

Substantial Equivalent.

█ As a whole, the case seems to fall within the law of substantial identity. The inventor hit upon the idea that the old-fashioned disc would do for turning stubble without preliminary plowing. He made one, probably a little heavier than the old horse-drawn disc, for the tractor had solved the problem of its being a "horse killer." Probably it was a bit more convenient, or comely, than its predecessors. But the law is, as stated by Judge Adams, in Torrey v. Hancock, 184 F. 61 (8th C. C. A.) in holding void a rotary plow because of prior cultivators:

"Prior patents in the same and closely related fields had so definitely suggested the backward inclination of disks and physical unpatented structures had so actually employed them in practical and useful devices containing all the elements of the combination of the second claim that Hardy, in our opinion, could not have been the original inventor of that combination. With all these patents and physical structures before him it did not require inventive skill to follow the directions and reproduce the structures, even in his improved form. He got up a more comely and graceful plow. The beam was of iron instead of wood, and as a whole, the plow was less cumbersome and more symmetrical, and probably more salable; but, like the B-6 in comparison with the No. 6 plow, it was only a natural mechanical development of pre-existing types. It introduced no new element, and made no essential rearrangement of old elements. Any changes made were in degree, proportion, or symmetry. The plow of his patent did the same thing in the same way, and by substantially the same means as before, and although it produced better results it did not rise to the dignity of invention.'"

And Judge Sanborn said, in Lourie Implement Co. v. Lenhart (C. C. A.) 130 F. 122:

"One may not escape infringement by adding to or subtracting from a patented device, by changing its form, or by making it more or less efficient, while he retains its principle and mode of operation, and attains its result by the use of the same or of equivalent mechanical means." Page 129.

Judge Lewis, in Reflectolyte Co. v. Luminous Unit Co. (C. C. A.) 20 F.(2d) 607, said:

"A new combination, consisting of old elements functioning in the same way and producing the same result, with perhaps difference in degree only, as that of prior patented structures, held not to constitute 'invention.'"

See, also, Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 45 L. Ed. 586; Diamond Power Specialty Co. v. Bayer, 13 F.(2d) 337 (8th C. C. A.).

Constructively the inventor had before him all prior patents. Ford Motor Co. v. Parks, 21 F.(2d) 943 (8th C. C. A.). If the prior patents and prior art had been actually before him, it is doubtful whether he himself would have thought his machine displayed inventive genius. At the most, he discovered the adaptability of an old machine to a somewhat new purpose, availed himself of the tractor, perhaps added a bit to its convenience of operation, and introduced it successfully to the farming public. But no one or all of them combined is invention.

A decree will be entered for the defendant.