## McCARTY *v.* LEHIGH VALLEY RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 9. Argued November 14, 15, 1895. — Decided December 2, 1895.

The inventions claimed in the third and fourth claims of letters patent No. 339,913, dated April 13, 1886, issued to Harry C. McCarty for an improvement in car trucks, if not void for want of novelty, as the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, were inventions of such a limited character as to require a narrow construction; and, being so construed, the letters patent are not infringed by the bolsters used by the appellee.

If, upon the face of a record, anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence.

THIS was a bill in equity for the infringement of two letters patent issued to McCarty for improvements in car trucks, viz.: Patent No. 314,459, dated March 24, 1885, and patent No. 339,913, dated April 13, 1886. The application for the first patent was filed June 5, 1884, and for the second patent, August 31, 1883, so that in reality the second patent represents the prior invention. Upon the hearing in this court, complainants abandoned their claims under the first patent, No. 314,459, and asked for a decree only upon the third and fourth claims of the second patent, No. 339,913.

The invention covered by this patent consists of a metallic bolster for car trucks, upon which the whole body of the car is carried by a swinging pivot, as shown in the following drawings:

Figure 1 of these drawings represents a side view of the car truck between the wheels, the ends of the bolster resting upon the side irons A of this truck. Figure 2 represents the bolster,

formed of a top iron bar, F, and a lower iron bar, G, the bar F being arched and bolted at its ends to the bar G. Between the bars are the supporting metallic columns H, which rest on the bar G. The crown or central portion of the bar F rests upon these columns, the bars and columns being firmly bolted together. J represents the side bearings, which rest on and are bolted to the bar F, and have connected with them the ends of the truss rods K, which are of inverted arch form. These side bearings and truss rods, however, are immaterial in the present case. On the under side of the ends of the bar G are screwed the plates P, whose sides are notched or grooved, as at *a*, to receive the columns B of the side irons, the plates thus forming the end guides or supports of the upper bolster. The ends of the bar G are turned upwardly, forming the flanges Q, against which the ends of the bar F abut.

The third and fourth claims, the only ones in issue, were as follows:

" 3. The lower bar G having flanges Q turned up on its ends, in combination with the arched upper bar F, having its ends bearing against said flanges, the guide plates P, bolted to the ends of said bars under the same, the stops or blocks M inserted between bars F and G, near their ends, and the pillars H, also interposed between said bars, as stated."

" 4. The upper bolster, composed of the bent bar F, straight bar G, and interposing columns M, in combination with the plates P, secured beneath the bars FG at their ends, and notched or grooved on their sides at *a*, to receive the columns B of the side irons, substantially as and for the purpose set forth."

The answer of the defendants denied that McCarty was the original inventor of the alleged improvements; averred that said improvements were not of any advantage to the public; that the inventions were not patentable; had been described in prior publications; and had been publicly used elsewhere.

Upon a hearing upon pleadings and proofs, the bill was dismissed, and complainants appealed to this court.

*Mr. Jerome Carty* and *Mr. R. A. Parker* for appellants.

*Mr. Robert J. Fisher* for appellee.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The specification of the patent in this case does not, as specifications ordinarily do, state the peculiar functions of the patented device, the defects it is designed to remedy, or the features that distinguish it from other similar devices. This omission, however, is supplied by the testimony, which shows that the invention was due to the frequent breaking of wooden bolsters, of the form in common use, in what were termed the "diamond truck," and other forms of car trucks. After some fruitless experiments, McCarty conceived the idea of using two iron plates, thereby forming a strong bolster, without the disadvantage found in the use of wood alone, or wood in connection with the iron plates. This resulted in the application for patent No. 339,913, for a bolster partly supported by truss rods. It soon appeared, however, that the form shown in the drawings of 339,913 possessed the requisite strength without the truss rods, which were accordingly dispensed with, and patent No. 314,459 subsequently applied for.

A few days after McCarty applied for his first patent, viz., September 10, 1883, one William H. Montz made application for a similar device, upon which a patent was granted, apparently by mistake of the Patent Office, and an interference then declared between them. Priority in invention was awarded to McCarty, February 24, 1886, neither party taking any testimony. In this connection there was much evidence tending to show that in October, 1882, a convention of master car builders was held at Niagara Falls, at which McCarty's model was exhibited and examined by car builders, among whom was Mr. Lentz, master car builder of the Lehigh company, defendant in this case. Shortly after this Mr. Lentz wrote an official letter in behalf of the defendant, requesting McCarty to send a blue-print of his truck, as shown at Niagara Falls the week before. A blue-print was accordingly sent to him on October 24, which cor-

responded with the drawing annexed to patent No. 339,913, soon after which the defendant company began the manufacture of bolsters for use in their cars substantially after the form in the blue-print, and in the following year, Montz made application for the patent upon which the interference was declared between him and McCarty, which resulted in awarding priority of invention to McCarty.  But this question of priority, if not settled conclusively by the interference, becomes immaterial in this case in view of the anticipating device set up as a defence, which if sustained would probably apply as well to the one patent as to the other.

Freight cars are generally, if not universally, constructed so as to ride upon two four-wheeled trucks, upon which the cars are supported by means of devices called bolsters.  One of these devices is attached to the bottom of the car body, and is called a body bolster.  The other is attached to the truck, and is called the truck bolster.  The body bolster rests upon the truck bolster, and at the point of contact there is a device called the centre bearing plate, which, acting in connection with a king bolt, permits the truck to conform to inequalities and curvatures in the track, regardless of the direction of the axis of the car body.  Side supports, shown as J in figure 2, are also furnished, to secure stability of the car upon the truck, and prevent any tendency to upset, by limiting the rocking of the car body.  Ordinarily, though, the weight is carried upon the centre bearing plate, that the swivelling may be done as easily as possible, in order to avoid friction between the car and the side bearings, especially in hauling a heavy train around a curve.

Truck bolsters are sometimes set rigidly upon the truck frame.  These, however, were found defective since, in case of inequalities in the track, the sinking of bad joints, the unevenness of side tracks and their approaches, and more especially in cases of derailment, the trucks were subjected to a severe torsional strain, which racked them, loosened their bolts, and weakened their entire structure.  To obviate this, it had become common to rest the ends of the bolster upon springs in the side trusses between the wheels, as shown in figure 1, and

also in several prior patents. These are termed floating bolsters, the object of which is to relieve the car from shocks caused by any unevenness of the tracks or roadbed.

Bolsters made of wood, which were formerly used and found to be sufficient under light loads, especially when trussed, were, when used to carry the heavy loads of modern cars, which are double, and even triple the weight formerly carried, found insufficient, and have largely given place to bolsters of iron.

The bolster in question consists of two bars of metal, F and G, placed one upon the other, the lower one, G, being horizontal, and the upper one, F, arched so as to form the truss. The lower bar is made longer than the upper, and its ends are turned up into flanges, Q, so as to form abutments or bearing surface for the ends of the upper bar, and thus to receive the end thrust caused by the weight imposed upon the bolster. Between the two bars, at their central point, are supports or columns, HH, which rest at their lower ends upon the lower bar and hold upon their upper ends the upper bar, fastening bolts being passed through the bars and the columns. Similar short columns, MM, are placed between the bars at the point where the arch of the upper bar begins. To the under side of the bolster so formed is bolted a plate, P, which serves to guide the bolster between the columns of the truck frame, the sides of this plate being notched, as shown at *a*, so as to fit around the columns of the truck frame. In connection with this truck bolster, there are truss rods, K, which pass diagonally through castings placed upon the upper side of the truss, and are supported upon seats under the lower bar, and provided with the usual screw threads and nuts for giving them the proper degree of tension. These truss rods, however, form no part of the third and fourth claims in dispute.

These claims differ from each other principally in the fact that the flanges Q at the ends of the lower bar G, as well as the pillars H, constituting elements in the third claim, are not found in the fourth; while the fourth describes the plates P, which are stated in the third claim to be " bolted to the ends of said bars under the same," as " secured beneath the bars

FG at their ends, and notched or grooved on their sides at *a*, to receive the columns B of the side irons, substantially as and for the purpose set forth." There is no suggestion in either of these claims that the ends of the bolster rest upon springs in the side trusses, although they are so described in the specification and exhibited in the drawings. It is suggested, however, that this feature may be read into the claims for the purpose of sustaining the patent. While this may be done with a view of showing the connection in which a device is used, and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that if we once begin to include elements not mentioned in the claim in order to limit such claim and avoid a defence of anticipation, we should never know where to stop. If, for example, a prior device were produced exhibiting the combination of these claims *plus* the springs, the patentee might insist upon reading some other element into the claims, such for instance as the side frames and all the other operative portions of the mechanism constituting the car truck, to prove that the prior device was not an anticipation. It might also require us to read into the fourth claim the flanges and pillars described in the third. This doctrine is too obviously untenable to require argument.

The court below dismissed the bill upon the ground that the patent had been substantially anticipated by prior devices, which required nothing more than mechanical skill to adapt them to the purposes of this patent. In this connection, defendant introduced a device known as the " Old Metal Transom," which appears to have existed prior to 1882, and probably before the date of the McCarty invention, which he fixes as in June, 1881, although from his correspondence with the Patent Office it appears very doubtful whether he perfected it before July, 1882. This transom was used not as a truck bolster, but as a body bolster, and consisted of a straight bar corresponding to the bar G, having the flanges Q at the end, a bent bar corresponding to F, and interposed columns corre-

sponding to the columns M. It is in fact the McCarty bolster turned upside down, with the plates P, which are only neces-sary in a floating bolster, omitted. The only object of these plates, fitted as they are with notches to embrace the columns of the side trusses, is to serve as a guide for the ends of the bolster as they rise and fall upon the springs.

Defendant also exhibited the Naugatuck truck, which ap-peared to have been used upon the Naugatuck Railroad in the State of Connecticut as early as 1862, and was still in actual use upon the New York, New Haven and Hartford Railroad, the present owner of the Naugatuck. This contains a truck bolster having all the substantial elements of the McCarty combination, including the straight bar and flanges, the bent bar and the intervening columns, although, like the Old Metal Transom, it contained nothing corresponding to the plates P, which, as before observed, are only required in connection with a floating bolster. The ends of this bolster were fitted rigidly to the side trusses. The springs, instead of supporting the ends of the bolster, were placed over the journal bearings, and imparted a limited motion to the carriage. The guide plates are obviously unnecessary in this construction.

The following drawings exhibit the McCarty bolster so far as the combinations of the third and fourth claims are con-cerned, and the corresponding features of the Naugatuck bolster :

*McCarty Truck Bolster.*

*The Naugatuck Truck Bolster.*

The invention, then, of McCarty consisted in taking the Naugatuck truck or bolster, turning it into a floating bolster, by adding the guide plate, P, and resting its ends upon the springs in the side trusses, which springs, however, are not made an element of either the third or. fourth claims. Even if they had been claimed, they would not of themselves constitute a novel feature, as they are admitted to have been used long before, and are described in several prior patents in connection with bolsters of the old pattern. The wedge-shaped blocks or columns M are unimportant, as angle irons in analogous positions are well known in the art, and are shown in prior patents. In addition to that, it does not appear that defendant used them. The Naugatuck truck was doubtless improved by the changes made by McCarty; but if there were anything more in this than mechanical skill, or the aggregation of familiar devices, each operating in its old way to produce an aggregated result, it was invention of such a limited character as to require a narrow construction. The case is not unlike that of the *Pennsylvania Railroad* v. *Locomotive Truck Co.*, 110 U. S. 490, where a patent for employing a particular car truck, already in use on railroad cars, on the forward end of a locomotive, was held void for the want of novelty, the court referring to the familiar principle that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated.

There is another consideration which leads to the same conclusion. The original application, made by McCarty, contained among other things a broad-claim for "a truck bolster provided on its ends with supporting and guiding plates, substantially as and for the purpose set forth." This claim, being obviously too broad in view of the prior patents, was amended so as to read as follows: "A truck bolster provided at its ends with plates which are notched to fit upon vertical parts of the frame so as to serve as guides and supports for said bolster, substantially as set forth." This claim having been apparently

rejected, the patentee abandoned his broad claim for a notched plate, and claimed only a plate in combination with the other features of his bolster, which was finally allowed.   His acquiescence in the rulings of the Patent Office in this particular indicates very clearly that he should be restricted to the combination claimed, and that the case is not one calling for a liberal construction.

In view of these limitations upon the McCarty patent, was there any infringement in defendant's device?   This device contained the bars F and G, and the pillars H of the McCarty patent, but instead of having the flanges Q upon the ends of the lower bar, and the guide plates P, there was substituted a cap shown in the patent to Montz, of which the following is a drawing:

This cap contains a recess, *i*, for the reception of the ends of the bolster bar, which are thereby maintained in proper position with respect to each other, and is secured to the ends of the bolster bar by means of two bolts passing vertically through them. The cap, which fits between the posts of the side frame and rests upon a spring, is provided at each side with flanges, *i'*, which embrace the outer and inner faces of the posts, and prevent a longitudinal motion of the bolster, while permitting the same to move freely in a vertical direction.   Now, as in view of the Naugatuck truck, there was nothing which could be called novel in the third and fourth claims of the McCarty patent, except the guide plates P, which were used to adapt this bolster to the purposes of a floating bolster by resting its ends on springs; and as the cap in question is an obvious de-

parture from the device in this particular, we cannot say that it is an infringement, although it accomplishes practically the same purpose as the flanges Q and plate P of the McCarty patent. Had it been wholly novel to rest the ends of the bolster upon springs, by means of guide plates, it is possible we might have been able to hold this cap to be an infringement; but as the novelty consists, not in resting the ends of bolsters generally upon springs by means of a guide plate, but in so locating the ends of a bolster of a particular construction, we think the employment of a different means of locating it avoids the charge of infringement.

It is further claimed that the defendant is estopped to question the novelty of the McCarty patent and its priority of invention by the interference proceedings in the Patent Office. Aside from the fact that the issues in those proceedings included the truss rods, which are not used by the defendant, the evidence that the defendant was a party in privity to Montz's application for the patent which was awarded to him, or that he made his application in their interest, is too inconclusive to justify us in holding that the company was bound by the result of this proceeding. It practically rests upon Montz's reply to the question why he did not proceed with the interference, that he had no orders from his superior officers of the road. This we think is insufficient, in the absence of affirmative evidence that the company had knowledge of the proceeding, and assented to the action taken by Montz. There is not that certainty to every intent, which Lord Coke held necessary to constitute an estoppel, and as observed by this court in *Russell* v. *Place*, 94 U. S. 606, 610, " If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."

The decree of the court below dismissing the bill is, therefore,

*Affirmed.*