WHEELER et al. v. JAMES.

SAME v. MURRAY.

(Circuit Court, E. D. New York. August 5, 1911.)

PATENTS (§ 328*)—VALIDITY—CLAIMS BROADER THAN INVENTION—CARBURET-
ERS.

In the Schebler patent, No. 806,434, for a carbureter, while the speci-
fication and drawings may disclose a patentable invention, claims 1, 2,
and 3 are invalid, as broader than the actual invention so disclosed and
in view of the prior art.

In Equity. Suit by Frank H. Wheeler and George M. Schebler, do-
ing business as Wheeler & Schebler, a partnership, against William
James, trading as Generator Valve Company, and same against John
A. Murray, trading as Monarch Valve Company. On final hearing.
Decrees for defendants.

Kerr, Page, Cooper & Hayward (Drury W. Cooper, of counsel),
for complainants.

Henry D. Williams, for defendants.

CHATFIELD, District Judge. The complainants have brought
action against two defendants who are making and selling car-
bureters containing the same elements as are described in complain-
ant's Schebler patent, No. 806,434, issued December 5, 1905, upon
an application filed October 30, 1903. The defendants' carbureters
are both almost exact copies of the patented device, and no question
of infringement, apart from that of validity, exists as the record
now stands. The complainant was allowed four claims, of which
three must be considered herein; the fourth claim being merely as to
a form of throttle valve, which has no bearing. Claims 1, 2, and
3 are as follows:

"1. A carbureter consisting of a main casing having an air-passage there-
through with an induction-opening and an eduction-opening, an air-inlet struc-
ture, a throttle-valve structure, and means for securing either of said struc-
tures to either the induction or eduction openings.

"2. A carbureter consisting of a main casing having an air-passage there-
through with an induction-opening and an eduction-opening, and an air-in-
let structure provided with a yielding check-plate normally obstructing the
passage therethrough.

"3. A carbureter consisting of a main casing having an air-passage there-
through with an induction-opening and an eduction-opening, an air-inlet struc-
ture provided with a yielding check-plate normally obstructing the passage

therethrough, a throttle-valve structure, and means for securing the inlet structure and the throttle-valve structure to either the induction or eduction openings."

The interchangeable feature shown in claims 1 and 3 is claimed not to be infringed by one of the defendants (Murray) who uses different size screws for the attachments at the opposite sides of his carbureter, thus voluntarily doing away with the possibility of exchanging the point of attaching those parts to fit different positions of the engine. But it appears that, if the patent be valid and the defendants' structures infringe claims 1 and 2, they (or either of them) cannot escape the charge of infringement of claims 1 and 3 by some purely mechanical variation which interferes with the full benefit of the complete device. He cannot contend that he does not infringe because he does not seek every advantageous use that an infringing structure or the patent itself may be capable of, and which would be available by a purely mechanical alteration of the size of screw. Hence the validity of all these claims must be considered.

Upon final hearing the defendants have introduced a large number of patents in addition to those presented upon the argument for a preliminary injunction under claim 1 (which was denied). They endeavor to show that the claims of the Schebler patent, Nos. 1, 2, and 3, are so general in their language as to be anticipated, and hence invalid, or that, if the Schebler patent be limited to the matters as to which the possibility of invention existed as shown by the specifications and drawings of the patent, the complainant cannot recover because of his attempt to claim broad ideas, old in the art, and only generally fitting the drawings and specifications, which show such a limited form or combination of elements that the discovery should have been confined to an exact statement of the device. The general ideas of a basic patent were not (and should not have been claimed as) the invention of the patentee.

The patents of the prior art are so many in number, and their ideas depend so much upon the particular method of construction or control, that, aside from the general language contained in the Schebler claims, they, in most instances, are easily dismissed from consideration. Many of them have been discussed on the application for preliminary injunction. The development of a carbureter for automobiles was accomplished in a very short time, owing to the rapid growth and spread of the automobile industry at just about the period when Schebler applied for his patent. A number of patents cited by the defendants were applied for within the same six months in which Schebler attempts to show that he was working on his invention, and just prior to the time when he filed his own application. So many individuals were working at the same idea and along somewhat similar lines that it is impossible to entirely dismiss Schebler's claim of being the first inventor by saying that in the presence of so much proof his testimony as to priority must be absolute in order to be convincing. It is impossible to deny Schebler's priority of invention, if his testimony does show that he, even by a short time, reached a patentable idea, in such a way as to make others, who

189 F.—57

soon after perfected devices which might teach the Schebler invention, subsequent or nonavailable as citations against him. The patents cited show that a number of inventors had appreciated the desirability of using a single casing or structure with a float-feed, thus bringing the immediate supply of fuel, in small quantity, close to the engine and mixing chamber, but remote from the general tank of the automobile. The stability of level and added safety furnished thereby was developed by Le Blon, No. 685,993, of November 5, 1901, and by Schebler himself, No. 711,005, of October 14, 1902, in the use of a bowl-shaped casing, which gave much greater simplicity and compactness. In this earlier patent Schebler also disclosed the idea of a tube or air-passage through the bowl, which should act as a mixing chamber, into which the valve or spraying device would directly enter. Schebler also disclosed in that patent the advantage of locating the nozzle or spray at approximately the center of the bowl, and of having the air pipe pass through this center portion while terminating at opposite and differing points of the exterior. The earlier Schebler patent (as well as that of Inman, No. 633,320, September 19, 1899, Baker, No. 291,128, January 1, 1884, Bates, No. 660,482, October 23, 1900, and others cited) show a symmetrical structure which could be reversed as a matter of course. Other patents such as Bollee, No. 584,666, June 15, 1897, Bates (supra), Dawson, No. 668,953, February 26, 1901, Inman, No. 700,777, May 27, 1902, Frenay, No. 24,974, March 20, 1902 (British), show the same sized connection for inlet and outlet of the air and mixture, thus allowing for reversal of direction of the flow without affecting operation. But symmetry does not mean reversibility in the sense of gaining advantage by the change of direction, nor do any of these patents (except Schebler's own earlier patent to some extent) show an appreciation of the gain in providing for the change of connection without reversing the carbureter. Nor do these patents teach or disclose this advantage so as to invalidate the claim thereof by Schebler in his second patent. Hence, the first and third claims of the patent in suit would seem to be valid except in so far as they are open to the objections raised because of the wide scope and general character of the language used therein. The idea of automatically controlling the supply of mixture according to the demands of the engine has been the source of much invention. Many of the patents cited, such as Rolfson, No. 509,828, November 28, 1893, Davis, No. 583,982, June 8, 1897, Bollee (supra), Dawson (supra), Krastin, No. 687,840, December 3, 1901, Johnson, No. 4,064, December 21, 1901 (British), regulate the flow of oil or gasoline by a valve control which varies to meet the demand for mixture. Others, such as Krebs, No. 734,421, July 21, 1903, and Pidgeon, No. 8,930, January 8, 1903 (British), recognize the idea of increasing or diminishing the quantity of mixture by providing for the inlet of a greater amount of air to be acted upon by the vapor supplied in the mixing chamber, and have an inlet and outlet structure for the control of air and mixture, but neither of them teaches or shows a single air-passage which of

itself allows for a varying quantity of air into the mixing chamber so as to thereby control the suction of oil and the volume of mixture. Pidgeon says the additional "air, partly by diluting that which passes through the carbureter, and partly by reducing the suck in the carbureter, can be so proportioned as to automatically keep the mixture approximately correct for all speeds." Krebs says that by his invention "the admission of air is varied" by letting in additional air through another inlet, and that by this means "the composition of the explosive mixture is kept constant." Thus Krebs and Pidgeon have the idea worked out in the Schebler carbureter, so far as the reason for the structure is concerned, and express this idea more nearly than Schebler, who says he wishes to provide means for "automatically varying the proportions and the character of the mixture" by increasing the size of the air inlet at high speed "so that the mixture produced will be less rich." Thus Schebler (while stating exact application and proper use of the parts of his carbureter) evidently did not appreciate or carefully state the result of his correct and practical theory, and it becomes less difficult to see why the language of his claims is so vague and actually defeats his attempt to "distinctly claim and particularly point out the improvement or combination" (R. S. 4888) which he did invent. A number of the patents cited apply heat as well as regulation to the air, the oil, or the mixture, but these patents do not anticipate the idea of Schebler, nor does the fact that in one type outside heat is also used by Schebler throw any light on the issue.

The form of air inlet and also the use of a throttle valve as described and applied by Schebler are old and several of the patents cited, such as Bates (supra), Frenay, British (supra), show an air-passage which fulfills the purpose of the air-passage which Schebler carries through his casing, but none of these suggests the form of Schebler with the advantages of the compact, symmetrical, and practical structure which he gains thereby, and for which he seems able to claim invention. The benefit of attachment at the side and top (or at points in different horizontal and vertical planes) is also new in Schebler, although (as has been pointed out) some of the symmetrical or reversible structures of the other patent could be used in that way by forced mechanical change. This idea is plainly claimed by Schebler, and seems to be sufficiently a part of his original idea in making a compact and variable carbureter, to be allowed as invention. At this point it may be well to consider the date of invention by Schebler and the dates of application for other patents, such as Krebs, who followed closely on Pidgeon.

The testimony shows that on July 1, 1903, Schebler assigned his earlier patent and agreed to assign improvements made after that date. Other testimony would indicate that Schebler had perfected the idea of the patent in suit before that time, and that his application for this patent in October of that year was, therefore, within his rights. He would seem to be thus able to claim invention before the issuance of the Krebs patent, but not before the Krebs application.

No interference proceeding was possible, and Schebler was granted his claims with the Krebs patent actually issued. Thus Schebler is entitled to claim as invention what may be valid in the light of disclosure by Krebs (and still more so as to Pidgeon), but the action of the Patent Office in limiting Schebler to a casing with an "air-passage therethrough" shows that Schebler cannot maintain the position of inventor of the broad principle of controlling operation by regulating the entrance of air alone. The Schebler carbureter proved practical and convenient. Its sales have been large and began immediately, and this is some evidence in support of the patent as issued. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275.

It would therefore seem that, viewing the patents of the prior art from this examination, Schebler had a patentable idea with reference to the combination of a more or less spherical bowl as a casing, the conduction of air by a continuous air-passage (inside the casing), from the entrance of that passage to the point where it leaves the casing, in such manner as to inject into the air tube the gasoline or other fluid from a small supply regulated by a float valve, by such means and at such a point as to increase or diminish the supply of gasoline, and also the quantity of air, solely through the demand upon or suction of the mixture by the engine, this latter demand depending upon speed or other conditions which have to be met, but which need not be examined as to cause. Schebler also seems to have discovered the possibility of adjusting the supply of air in the manner described (by the use of the inlet which he employs) and of controlling the quantity of mixture by the effect of the suction (resulting from the use of a throttle valve) upon the pressure within the carbureter (with an automatic regulation of the flow of gasoline from the effect of that pressure) all combined in one structure. But Schebler did not attempt to limit his claims merely to the application of these principles (which can separately be found in one or another of the prior patents), nor does he seem to have tried to patent the particular device or combination of devices constituting his style of carbureter, as indicated by his drawings and specifications, and thus to make patentable use of the principles well known, so far as cause and effect are concerned, in similar patents. He showed by his drawings and specifications that his invention was of this nature. When he reached the point of stating his claims, after more or less correspondence with the Patent Office, he stated that his invention consisted in the discovery of the broad ideas shown in a number of patents, and he failed to limit whatever invention he may have made, or whatever ideas he may have reached, to the improvements in the structure which he describes in the specifications and drawings. In his specifications he says:

"In the construction of automobiles of the gas-engine type a carbureter is an essential element; and the object of my present invention is to provide an efficient carbureter of the type shown in my patent No. 711,005, which is exceedingly compact and the parts of which may be rearranged with relation to each other in order to adapt the apparatus for use in different types of machines."

Also:

"A further object of my invention is to provide means for automatically varying the proportions and the character of the mixture produced and to provide such improvements in details of construction as are hereinafter pointed out."

But, when he sets forth what he claims, he does not specify a float-feed nor a bowl casing. He provides for no gasoline nozzle or supply at all, much less one located at the center of the bowl and in the air-passage. He describes the basic claim of a compact carbureter with a regulation of the supply and mixture by the inlet and outlet, and couples this broad idea with those of the air-passage "therethrough," and with interchangeable attachments; but even these are not differentiated from the opposite sides of a merely symmetrical structure, nor described as being at the ends of an L-shaped passage. He does not refer to the specifications and drawings, nor suggest that his distinct claim is an improvement of the type described or a combination of the elements specified as making up his structure. In short, he merely adds to his earlier patent the inlet and throttle valve, with the interchangeable character of the parts. Can such claims be held valid?

The inlet and throttle valve were not new except in his particular combination. The interchangeability is not infringed by the defendant Murray, and was not patentable except as applied to the particular device or combination which Schebler describes in his specifications, so as to accomplish a definite benefit. If he had claimed a combination of old parts in such a way that a new method was involved, then he might claim the method as a result of the use of those or any equivalent parts. But Schebler does not seek to do this. He has tried to claim as invention the general idea of a carbureter of any type (although his type was plainly taught in his earlier patent) with the ideas patented by Krebs and Pidgeon (to say nothing of Dawson and Krastin), and to protect this wide basic proposition by adding interchangeability. Did he thereby get a valid patent even for the idea of interchangeability? It seems impossible to so hold. The details of the drawings and specifications are not even alleged to be invented by him. He has stated them as premises, and they might have been invented by any one. He then claims, not these parts or their method of use or their combination, but, on the other hand, general ideas which were unpatentable, and claims which would be infringed by many devices patented long before. Apparently such claims should have been refused by the Patent Office. He should have been compelled to state what he described, and what he really seems to have invented and intended. He cannot now be heard to say that his broad claims are really limited and explained by the drawings and specifications which are not by reference or description made a part thereof.

From another point of view, he seems to try to claim the idea that a carbureter can be successfully made out of nothing but a casing, an air-passage, with inlet and outlet structures (to regulate air at the inlet and mixture at the outlet), and with these structures re-

versible. He throws away the bowl idea, the float-feed, and the gasoline nozzle. Such a device would not be a carbureter at all if limited to these parts, and without a gasoline supply. On the other hand, if it be taken that Schebler claimed to have invented the method of operation or idea that a carbureter could be made of nothing but these parts, then his earlier patent had already shown the same structure with less parts and probably less availability. The later patent showed merely that a better carbureter could be made of the early device with additional parts, and the successful mercantile carbureter is·an improvement or a device made out of the old by the added attachments. It is not a new general invention of the ideas indicated by Schebler's claims.

The scope of a claim is set forth in White v. Dunbar, 119 U. S. 51, 7 Sup. Ct. 72, 30 L. Ed. 303, in which it is held that the context —i. e., the specifications—"may be resorted to 'for better understanding the meaning of the claim, but not for the purpose of changing it and making it different from what it is." This patent is not like those in McCarty v. Railroad Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358, or U. S. Repair & Guaranty Co. v. Assyrian Asphalt Co., 183 U. S. 591, 22 Sup. Ct. 87, 46 L. Ed. 342, where the claims were narrower than the specifications, and an attempt was made to show that the patentee had really invented everything covered by the ·specifications. In these cases the court held that infringement of the claims could not be found because of infringement of the ideas which they had been intended to cover. The case of Evans v. Eaton, 7 Wheat. 356, 5 L. Ed. 472, is more nearly in point. As, also, Consolidated Bunging Apparatus Co. v. Metropolitan Brewing Co., 60 Fed. 93, 8 C. C. A. 485, Excelsior Needle Co. v. Morse-Keefer Cycle-Supply Co., 101 Fed. 448, 41 C. C. A. 448, and Edison v. American Mutoscope Co., 114 Fed. 926, 52 C. C. A. 546. In these cases it was held that a patentee could not after using broad claims show that a narrower construction was meant or could be surmised from the specifications, nor could the court work out the real invention so as to define the inventor's meaning as he should have stated it. See, also, Walker on Patents, p. 170, par. 181, and 2 Robinson on Patents, pp. 139, 140.

A reissue would seem to be necessary before Schebler can prove infringement of any valid claim, and, as the case stands, the defendants should have decrees.