27 C.C.P.A.(Patents)

## In re ALLEN.

### Patent Appeal No. 4298.

Court of Customs and Patent Appeals.
April 29, 1940.

James H. Littlehales, of Washington, D. C., and Albert G. McCaleb, of Chicago, Ill., for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner rejecting, in view of the prior art, all of the claims, 1 to 5, inclusive, of an application for a patent for alleged new and useful improvements in the art of sausage manufacture.

Claims 1 to 3, inclusive, are article claims, and claims 4 and 5 are method claims.

Claims 1 and 5 are illustrative, and read as follows:

"1. As an article of manufacture a processed sausage having in its casing filler a substantial percentage of cereal grain grits."

"5. The improvement in the art of making a processed sausage which consists in incorporating in the sausage filler a substantial quantity of cereal grain grits of the kind having a minute quantum of salt carried by each grit."

The reference cited is Zumstein, 116,389, June 27, 1871.

The alleged invention relates to processed sausage and the making thereof. The ingredients of the sausage include a substantial quantity or percentage of cereal grain grits.

Appellant states, in his application, that "the only essential difference between my improved method and other improved methods of making processed sausages" is "that I dispense with flour as the grain cereal ingredient and substitute therefor, in the casing filler, an equivalent percentage (preferably 5% to 10% but even 15% or more) of specially treated *grits* (sometimes called farina or non-pulverized meal) of wheat, corn, buckwheat, soya bean, rye, barley and/or oats."

The article and method claims are so closely related that it is not necessary to discuss them separately.

The Zumstein patent teaches the use of "roasted yellow pea-flour, beans, Indian meal, barley, or other cereal" in the making of a meat and vegetable sausage.

In rejecting the involved claims as lacking invention over the cited prior art, the examiner held as follows:

"* * * This patent teaches the incorporation of flour or *meal* in sausage meat. It is thought that the employment of grits in meat is nothing more than a continuation of the teachings of Zumstein. Meal con-

ventionally exists in a larger particle size than flour. Hence it is thought to be a matter of personal fancy or convenience to extend the teachings of Zumstein from flour to meal and from the meal to the grits claimed by applicant.

"It is not apparent that the use of grits as opposed to flour or meal yields any results other than those readily predictable by a working knowledge of the physical characteristics of these products. In the absence of any unexpected function directly attributable to the presence of the grits, it is not thought that patentability may be predicated thereon."

The Board of Appeals stated as follows: "It is appellant's contention that, when flour or ordinary meal is used, the composition has a pasty consistency which renders the product unsatisfactory for use. It is claimed that by the use of grits this pasty condition is eliminated. According to the Standard Dictionary, grits are the coarse part of meal. The use of meal having been suggested by the prior art, it is not seen that the selection of some particular portion of this material or of some equivalent coarsely ground grain involves anything more than a judicious choice of materials available in the art. We are not satisfied that the alleged new result amounts to anything more than a difference in degree over what is inherently embraced in the patent disclosure. If Indian meal is used in accordance with the teachings of the patent, it appears to us that the sausage would partake of the characteristics here claimed to a greater or lesser degree, depending on the coarseness or fineness of the grinding."

Appellant filed with the Commissioner of Patents a petition for rehearing of his appeal and the board, in a subsequent decision, again affirmed the examiner's action.

Appellant contends here, as he contended below, that the grits as used in this invention are not merely the coarse part of meal, and urges that the tribunals below have mistakenly assumed that the efficacy of grits resides in their coarseness rather than in their hardness and non-moisture-absorbing properties.

From the application herein it is apparent that in making the filler for sausages it has been customary to add to the meats and spices a very substantial quantity of very finely divided straight or blended cereal flours; that this flour "when com-

mingled with the comminuted and invariably moist meat becomes a starchy paste"; that when the sausage is processed by cooking and smoking "this starchy paste, which substantially covers and fills the fissures in the particles of the other elements of the casing filler, becomes partially cooked or baked, and thus holds the particles of the other ingredients of the casing filler in a stiffly agglomerated mass"; that when grits are used in place of flour, however, the sausage when cooked and smoked remains friable, as the grits do not absorb the moisture from the meat particles and consequently the product is not pasty or hard.

We have been unable to learn from the lexicographers that grits are anything but the coarse part of meal and there is nothing in any of the claims to limit the use of cereal particles to a gritty, non-agglutinous cereal filler. As a matter of fact, there is no limitation in the claims which would limit the cereal content of the sausage to cereal grain grits except in claim 2 wherein it is stated: " * * * the cereal content of said casing filler being in the form of cereal grain grits." But, since we can find no authority which defines cereal grain grits as a separate and distinct cereal product, it is apparent that the quoted portion of claim 2 does not differentiate it from the other involved claims. Had the claims been limited to the use of cereal particles devoid of paste-forming elements the situation might be different; however, it is well settled that we may not read limitations into the claims even though the application disclosure would support them. In re Krichbaum, 39 F.2d 280, 17 C.C.P.A., Patents, 979; In re Stern, 40 F.2d 1000, 17 C.C.P.A., Patents, 1234; In re Wait, 83 F.2d 696, 23 C.C.P.A., Patents, 1172; In re Crowell, 84 F.2d 206, 23 C.C.P.A., Patents, 1246; McCarty v. Lehigh Valley Railroad Company, 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358.

In our opinion the alleged new result amounts merely to a difference in degree over what is disclosed by the patent.

The decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, took no part in the consideration or decision of this case.