644

## LEEDS & NORTHRUP CO. v. DOBLE ENGINEERING CO.

### No. 4171.

Circuit Court of Appeals, First Circuit.

Jan. 20, 1947.

George K. Woodworth, of Boston, Mass., for appellant.

J. Lewis Stackpole, of Boston, Mass. (H. L. Kirkpatrick, Edgar H. Kent and Fish, Richardson & Neave, all of Boston, Mass., on the brief), for appellee.

Before MAHONEY, GOODRICH (by special assignment), and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a second judgment entered in protracted litigation involving the validity and infringement of claim 15 of Doble's patent No. 1,945,263 for an "Apparatus for Testing Insulating Values."[1] In our former opinion reported in 1 Cir., 134 F.2d 78, we stated the problem to which Doble addressed his attention and his solution thereof. For present purposes it will suffice to refer briefly to the salient facts and give a resume of prior proceedings.

Broadly speaking it may be said that Doble set out to convert a known apparatus for testing the insulating values of dielectrics (insulators) in a laboratory, into an apparatus which could be used to test dielectrics under service conditions at the place of their installation, as in the yard of an electrical station, where insulators are ordinarily connected to ground. That is to say, he undertook to transform a stationary laboratory apparatus of the prior art into a portable apparatus which could be used "in the field". To accomplish his end he had to devise some way of protecting the delicate electrical measuring instruments of the apparatus from the effects of stray electrical currents present "in the field" but either not encountered at all in a laboratory, or else capable of avoidance in a stationary apparatus in which the insulator under test was disconnected from ground. These stray electrical currents are of two kinds: those arising from the flow of electricity through the apparatus itself, called "internal charging currents", and those caused by the varying moisture content of the earth from day to day and from place to place and by the presence of high tension transmission lines, generators, and the like, near the place where dielectrics are ordinarily installed for service. In our former opinion we called the latter "external charging currents". To solve the problems created by these charging currents Doble devised two shielding systems; an internal one to cope with internal charging currents and an external one to cope with external charging currents. These electrical

---

[1] "An apparatus for measuring in the field electrical qualities of insulation interposed between a grounded structure and a high tension terminal, comprising a source of alternating voltage adapted to be connected in circuit with said high tension terminal and said grounded structure, measuring means interposed in circuit between said voltage source and one side of the insulation for taking measurements determinative of energy loss and current, and means for shielding said voltage source and its connection with said high tension terminal so as to divert their charging currents away from the measuring means."

shields constitute the heart of Doble's patent.

At the first trial in the District Court the master construed the claim in issue as covering both shielding systems in combination, and he did so in spite of the fact that the claim only mentions the internal shield standing alone. His reasoning was that since both shields, or their equivalents, in combination, are essential elements of any workable portable apparatus for testing insulators where they are installed for service, the phrase in the claim "in the field" limited it to Doble's inner shield in combination with his outer one, or some equivalent of it. Otherwise he thought the claim would be invalid as covering a result. Then as so construed the master found the claim valid but not infringed by either of the accused Leeds & Northrup devices for the reason that although the latter included internal shielding systems which "in substance" corresponded to Doble's, they did not include his external shielding system, but accomplished "the same ultimate result" of that system by means which "in the sense of the patent law" were not the equivalent of Doble's. The District Court adopted the master's conclusions and entered judgment accordingly and the owner of the Doble patent, Doble Engineering Company, appealed.

On that appeal we did not agree with the master's construction of the claim. Conceding that both shielding systems, or some devices or techniques to perform their separate functions, were essential elements of any practical portable testing apparatus for use in the field, we thought the claim in suit, in which the external shielding system is not mentioned, read in connection with the other 18 claims of the patent,[2] was intended to cover, and was allowed by the Patent Office as covering, only Doble's internal shield as a separable part, or subcombination of parts, of his entire apparatus. And, relying upon Deering v. Winona Harvester Works, 155 U.S. 286, 302, 15 S.Ct. 118, 39 L.Ed. 153, and cases like it, we thought that so construed the claim was not necessarily invalid even though the invention it de-scribed was incomplete and inoperative for the reason that the old laboratory apparatus could not be used successfully "in the field" without some means for dealing with external charging currents. Therefore we remanded the case to the District Court for a determination of the validity of the claim as we had construed it.

Pursuant to our mandate the court below referred the case again to the same master, and after further hearing he filed a supplemental report.

In this report the master said that he was unable to understand our former opinion. He said that as he read it there seemed "to be two possible constructions of the claim permissible"—either "(1) that the phrase 'in the field' is nugatory and the claim is for only the inner shielding system, standing alone as a sub-combination; or (2) that the phrase 'in the field' is not nugatory, but limits claim 15 to 'apparatus capable of use where dielectrics are installed for service', or 'useful in testing insulation as installed under service conditions', in which case the apparatus must have in combination with the inner shielding system some means (though not necessarily Doble's outer shields) for eliminating the effect of external charging currents." Regarding the difference between these two possible constructions of our former opinion as "all-important" in the view he took of the question of patentable invention, the master reported findings under each interpretation "leaving it to the court to decide what the claim means."

On his first assumption, that is, that the phrase "in the field" in the claim is nugatory, the master found invalidity for lack of invention. But on his second assumption, that is, giving the phrase the effect of limiting the claim to Doble's internal shield in an apparatus capable of use where dielectrics are installed for service, that is, in one having some means for coping with external charging currents, he found the claim valid. The District Court thought the master's second assumption correct. It said: "I construe, and I understand that the Circuit Court of Appeals construed,

[2] Some of these claims are for the external shielding system alone, some are for both shielding systems in combination, and others like the one in suit mention only the internal shield.

the phrase 'in the field' which appears in claim 15 not as being nugatory, but as having the effect of limiting the claim, precisely as stated in the claim, to apparatus capable of use for measuring in the field electrical qualities of insulation interposed between a grounded structure and a high tension terminal, whether the apparatus should be actually used there or in a laboratory; and the words 'in the field' do not restrict the claim specifically to Doble's outer shield system as the specific means for eliminating the effect of external electrostatic disturbances." The court below then adopted the master's finding of validity and accordingly entered a judgment to the effect that the claim in issue was valid and infringed. The Leeds & Northrup Company thereupon took the present appeal.

The master on his second assumption, and the District Court, properly interpreted our former opinion. In fact counsel for the appellant now concedes as much. He says, however, that the master's and the District Court's concurrent finding that so construed the claim is valid "is clearly erroneous because it is based on an erroneous view of the law."

The argument advanced in support of this proposition 'rests upon the master's conclusion on his first assumption, the erroneous one not adopted by the District Court, to the effect that in view of the prior art it did not amount to invention to devise Doble's internal shielding system for an apparatus having no means for coping with external charging currents. That is to say, it rests upon the conclusion of invalidity for lack of invention reached by the master on the mistaken assumption that the claim is for the internal shielding system per se, i. e., that the phrase "in the field" therein is nugatory or without significance. The argument is that this finding of invalidity, although properly rejected by the District Court, nevertheless indicates that Doble's internal shielding system was old; that this finding is not clearly erroneous and so cannot be reversed by us under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c; and that since his internal shield has now been found old the rule of Deering v. Winona Harvester Works is no longer applicable for the rea-

son that the sub-combination of elements under consideration in that case, although also inoperative, was new. It is said that since it is now established that Doble's inoperative subcombination, his internal shield, was old, to read into the claim means for dealing with external charging currents and hence means for making the subcombination operative in the field, "for the purpose of saving the patentability of the claim, or 'making out a case of novelty' would be a flagrant violation of one of the major canons of the patent law." McCarty v. Lehigh Valley R. Co., 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358. Then as an additional or supplementary argument the appellant says that since Doble's internal shielding system was old in a laboratory apparatus, it was a mere unpatentable "double use" to employ it an "apparatus for measuring in the field electrical qualities of insulation interposed between a grounded structure and a high tension terminal" as required by the claim. Potts v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275.

Both arguments rest upon the same premise—the premise that Doble's internal shielding system was old—and since we find this premise invalid, we can dispose of both arguments at once.

The master nowhere in his supplemental report found that Doble's internal shielding system was old in the sense that prior to him there existed an apparatus for measuring the electrical qualities of insulation interposed between a grounded structure and a high tension terminal having a shield which diverted all internal charging currents from its measuring instruments, and hence an apparatus which, so far as internal charging currents are concerned, could be used either in the field or in the laboratory. What the master found on his assumption that the phrase "in the field" was nugatory was invalidity for lack of invention for the reason that in view of an apparatus known as the Western Electric Bridge the prior art might be reconstructed without an exercise of the inventive faculty by putting together two separate elements thereof, specifically the shielding system of an apparatus known as the E.T.L. 1924 set and the shielding system of another known as the E.T.L. 1929 set, to

produce a purely laboratory testing apparatus containing the combination of elements called for in the claim.

There is some doubt in our minds whether such a finding provides an adequate basis for application of the rule of McCarty v. Lehigh Valley R. Co., supra. But we pass this question because we think the master's rejected finding of invalidity mistaken.

In the first place the master's conclusion of invalidity on his mistaken construction of the claim, as made in his supplemental report, is at variance with his conclusion in his first report "that to make such combination (that of the two E.T.L. devices in the light of the Western Electric Bridge) to accomplish the results of the Doble apparatus was in fact not thought of by any one before Doble and was not obvious but constituted patentable invention." [3] In the second place a conceded error in the master's supplemental report throws grave doubt upon the possibility of making the reconstruction suggested by the master (he made it by combining simplified drawings of the two E.T.L. devices) without producing a wholly inoperative apparatus for the reason that its measuring instruments would be short circuited. In the third place the master's reconstruction had never been made by any one skilled in the art over a period of years when there was substantial demand for a portable testing apparatus, as Doble's commercial success indicates. And in the fourth place the reconstruction was made only with the hindsight resulting from Dole's disclosure of his internal shielding system.

■ Considering these factors together we believe that the master must have made a mistake when he found that Doble had devised his internal shield without an exercise of the faculty of invention. Thus we find no basis for the appellant's argument of invalidity.

The question of infringement remains to be considered.

In his first report the master found, as already indicated in this opinion, that the accused Leeds & Northrup devices used internal shielding systems which correspond "in substance" to Doble's. Even more specifically than this, the master in that report found that both of the accused Leeds & Northrup devices would infringe claim 15 of the Doble patent but for the limitation which at that time he thought was imposed upon the claim by the phrase "in the field". Leeds & Northrup made no objection to this report, so in our former opinion we took infringement, as we construed the claim, for granted, although we did not directly consider that issue since the question of the validity of the claim as we construed it remained for final decision. Now, however, Leeds & Northrup contend that its devices cannot be found to infringe Doble's claim 15 as construed in our former opinion, that is to say, construed without the limitation which the master originally thought the phrase "in the field" imposed upon it.

■ The appellant says: "The internal shielding system is to be read as a subcombination in a structural whole and the other element necessary to make the set capable of use 'in the field', i. e., the outer shield or its equivalent, is present in the claim by virtue of the introductory phrase, and therefore plaintiff does not infringe because, admittedly, plaintiff's means for eliminating the effect on the measuring means of external charging currents are not the equivalent of the outer shield employed by defendant for this purpose; and plaintiff's apparatus has a distinctly different principle of operation from that of the Doble set due to the difference in the elements used by the respective parties for coping with external charging currents."

---

[3] This is a quotation from the finding referred to in our prior opinion as indicating that the master would have found claim 15 valid even though he had agreed with us as to how it should be construed. In his first report the master indicated that the internal shield standing alone constituted an invention because it was the first device capable of diverting all internal charging currents from the measuring means. But since he seemed to base his original conclusion of validity on the novelty of the external shield, which he then thought the claim covered, we considered it best to remand the case for an even more definitive finding.

This argument rests upon the master's original construction of the claim. It suggests that we revive the limitation which the master originally imposed upon the claim because of the phrase "in the field", which we read out of it in our former opinion, for the purpose of sustaining the master's first conclusion of non-infringement based upon his original erroneous construction of the claim. In other words, although it is conceded that the claim must be construed one way to decide the question of validity, it is suggested that we construe it another way to decide the question of infringement. It seems to us obvious that the claim must be construed the same way on both issues. Discovering no clear error in the master's original finding that the claim as we construe it is infringed, that finding must still stand.

The judgment and interlocutory decree of the District Court is affirmed.