**JEWISH HOSPITAL OF ST. LOUIS, Plaintiff,**

v.

**IDEXX LABORATORIES, Defendant.**

Civil No. 95–290–P–H.

United States District Court, D. Maine.

June 10, 1997.

---

David P. Silk, James L. Costello, Curtis, Thaxter, Stevens, Broder & Micoleau, Portland, ME, Chris A. Caseiro, Portland, ME, G. Harley Blosser, William E. Lahey, Robert M. Evans, Jr., Rudolph A. Telscher, Jr., Paul A. Maddock, J. Bennett Clark, Senniger, Powers, Leavitt & Roedel, St. Louis, MO, for Plaintiff.

Peter J. Rubin, Robert H. Stier, Bernstein, Shur, Sawyer & Nelson, Portland, ME, Mary S. Consalvi, Douglas E. Olson, Jessica R. Wolff, Lyon & Lyon, La Jolla, CA, Lois Kwasigroch, Lyon & Lyon LLP, Los Angeles, CA, for Defendant.

### ORDER ON JEWISH HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OF LITERAL INFRINGEMENT (CLAIMS 11 AND 12) [1]

HORNBY, Chief Judge.

Jewish Hospital has moved for summary judgment on claims 11 and 12, claiming literal infringement. Specifically, Jewish Hospital maintains that six IDEXX products, CITE® SemiQuant, Cite® SemiQuant (revised), PETCHEK®, PETCHEK® (revised), SNAP®, and SNAP® Whole Blood, infringe claims 11 and 12 of the '275 patent. IDEXX contests the motion.

First, I reject IDEXX's assertion that it did not believe that claims 11 and 12 were at issue in this case. Although claims 11 and 12 are not listed in the nonexclusive list provided at the November 6, 1995, Scheduling Conference, IDEXX itself subsequently counterclaimed that each claim of the Weil patent (necessarily including 11 and 12) was invalid. *See* IDEXX's Amended Counterclaim of Jan. 26, 1996 (Docket Item 25). In addition, IDEXX pursued three summary judgment motions concerning claims 11 and 12 (Docket Items 38, 86, 126), and Jewish Hospital's opposition to IDEXX's noninfringement motion (Docket Item 50) specifically asserted infringement of claims 11 and 12 on May 10, 1996. In short, whatever confusion there may have been at the beginning of this litigation, claims 11 and 12 have been at issue for a long while.

■ I address each of IDEXX's arguments resisting summary judgment. First, however, because literal infringement requires that "every limitation set forth in a claim ... be found in an accused product, exactly," *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995), I quote the disputed claims.

Claims 11 and 12 of the '275 patent protect:

11. An assay method for determining the presence of circulating parasite antigens of *Dirofilaria immitis* [heartworm] in the serum or plasma of *D. immitis*-infected dogs which comprises combining a sample of serum or plasma from a dog infected with *Dirofilaria immitis* and to which no parasite antigen or extract derived from *D. immitis* is added with a first monoclonal antibody which specifically binds to determinants present on said circulating parasite antigens, and detecting the presence of said antigens by means of a label on said first antibody or by means

---

1. IDEXX failed to respond to Jewish Hospital's motion for summary judgement of nonanticipation (Docket Item 99). In a Procedural Order, I instructed IDEXX to respond jointly to that motion and the present motion (Docket Item 95) in one brief. *See* Procedural Order of Feb. 14, 1997, at 6. IDEXX's response (Docket Item 188), however, only addresses the summary judgment motion on noninfringement. Consequently, I treat any argument of anticipation for claims 11 and 12 as waived by IDEXX. *See* Local Rule 7(b).

of a label on second antibody added to said first monoclonal antibody, said second antibody specifically binding to said circulating parasite antigens.

12. An assay method as set forth in claim 11 wherein said label is selected from the group consisting of radioactive labels, fluorescent compounds, enzymes, biotin and ferromagnetic labels.

## CONFIRMATORY VS. DIAGNOSTIC TESTING

■ I summarily reject IDEXX's argument that claims 11 and 12 are devoted to confirmatory testing rather than to diagnostic testing. It is apparent from the claims and from the patent as a whole that the subject at issue is diagnosis. IDEXX's position on this issue is frivolous.

## HOMOGENEOUS VS. HETEROGENEOUS ASSAY

■ Nothing in claims 11 and 12 limits their scope to a "homogeneous" test. IDEXX's expert, Dr. Hamilton, would like to interpret them as precluding a "heterogeneous" test (i.e., including a separate step such as IDEXX uses), but such a limitation is simply not supported by the patent. Dr. Hamilton's interpretation narrows the patented language and reads limitations into the patent that do not exist. There is no word or phrase in claim 11 or 12 that requires the test to be homogeneous, and IDEXX cannot avoid literal infringement by imposing limitations not present in the claim as patented. See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433–34 (Fed.Cir.)(" '[W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that if we once begin to include elements not mentioned in the claim in order to limit such claim and avoid a defense or anticipation, we should never know where to stop.' ") (quoting McCarty v. Lehigh Valley R. Co., 160 U.S. 110, 116, 16 S.Ct. 240, 243, 40 L.Ed. 358 (1895)), cert. denied, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). IDEXX has pointed to no portion of the claim, specification, or file wrapper that demonstrates that the patent examiner awarded the patent only for homogeneous tests, and therefore has failed to create a genuine issue of material fact with respect to this issue.

## "SPECIFICALLY BIND"

At an earlier stage, in seeking summary judgment on claims 7 through 14 for the line of SNAP® PF and PETCHEK® PF, IDEXX's Vice–President of Business Development (also its 30(b)(6) designee) stated by affidavit that "[a]ll of IDEXX's nine heartworm antigen diagnostic products" use ELISA technology by which "[b]oth the bound antibody and the labeled antibody *specifically bind* the antigen to be detected." Tonelli Aff. ¶¶ 10, 12 (emphasis added) (Docket Item 40). This affidavit is dispositive of IDEXX's new argument that Jewish Hospital has not provided evidence that the IDEXX antibodies "specifically bind." [2]

## WHOLE BLOOD VS. SERUM OR PLASMA

■ All of the IDEXX products in question except for SNAP® Whole Blood perform their tests on serum or plasma just as the specific requirement of claims 11 and 12 provides. I therefore GRANT summary judgment on literal infringement to Jewish Hospital on the CITE® SemiQuant, Cite® SemiQuant (revised), PETCHEK®, PETCHEK® (revised), and SNAP® products. The issue remaining is whether the SNAP® Whole Blood test, which purports to conduct its test on whole blood rather than serum or plasma alone, also literally infringes claims 11 and 12.

The parties agree that serum and plasma are components of whole blood, and that heartworm antigens are found in serum and plasma. IDEXX maintains, however, that claims 11 and 12 are limited to tests on serum and plasma and do not cover tests that detect heartworm in whole blood. Indeed, the language of the claim speaks of "serum or plasma" (although part of the description talks about using blood or bodily fluid). IDEXX maintains that it made the first effective use of whole blood detection and that

---

**2.** I therefore need not deal with IDEXX's experts' opinion that the tests do not specifically bind because they may also detect human virlarial antigens.

this novel method of detection resulted in its Patent No. 4,939,096 ('096). If effective, heartworm detection on whole blood would beneficially eliminate the serum/plasma extraction step.[3] Jewish Hospital, however, argues that IDEXX's '096 patent simply removes the red blood cells as part of the testing process so that in fact SNAP® Whole Blood's antigen testing *is* carried on in serum or plasma as Jewish Hospital's '275 patent describes.

Because the '275 patent claim language includes only language about "serum or plasma," a test solely on whole blood, without first extracting serum or plasma, would not literally infringe. Jewish Hospital claims that SNAP® Whole Blood's test with whole blood is a distinction without a difference, however since the detection process requires that the serum or plasma be extracted from the whole blood as part of the process. The result, claims Jewish Hospital, is de facto infringement since the SNAP® Whole Blood test eventually detects heartworm "in the serum or plasma" as the claims describe. In support of its argument, Jewish Hospital offers the declaration of Dr. Kate Murashige, *see* Hospital's Reply Br., Ex. 3 ¶ 4 (Docket Item 195), which states that "[a]ssuming that the method set forth in ['096] is employed, it is apparent that the assay itself is conducted on plasma rather than whole blood." Dr. Murashige goes on to explain that '096 elaborates on how to separate the red blood cells from the whole blood, but concludes that "[w]hole blood is always the starting material prior to its separation into the red blood cell and serum components.... It could not be more clear that the assay itself is being conducted on the ... plasma." *Id.* ¶ 5. IDEXX does not dispute that serum or plasma are extracted from the whole blood as part of the process, arguing only that starting with whole blood is a "distinction [that] is not immaterial," Opp. to Mot. for Summ. J. at 3 (Docket Item 188). Nor does IDEXX

dispute Jewish Hospital's characterization of its process other than to assert that its '096 patent is proof of the novelty of the test. Therefore, I find that although the IDEXX test begins with whole blood, the de facto result is that its detection works on extracted serum or plasma. Consequently, the IDEXX test literally infringes claims 11 and 12, leaving IDEXX to rely on an affirmative defense to avoid summary judgment.

 Having found that the SNAP® Whole Blood test falls literally within claims 11 and 12, I must consider IDEXX's argument that it is saved by the so-called reverse doctrine of equivalents under *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1123–24 (Fed.Cir.1985):

> '[W]here a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used [in reverse] to restrict the claim and defeat the patentee's action for infringement.'

*Id.* at 1123 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)) (alteration in original); *see also Boyden Power–Brake Co. v. Westinghouse,* 170 U.S. 537, 568, 18 S.Ct. 707, 722, 42 L.Ed. 1136 (1898) ("The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent."). Although this is Jewish Hospital's motion for summary judgment, IDEXX must carry some burden since the

---

**3.** Although IDEXX concedes that its SNAP® Whole Blood test could work on either on serum or plasma or on whole blood samples, *see* Letter from IDEXX to Clerk of Court (Mar. 19, 1997) (Docket Item 193), Jewish Hospital has offered no evidence of any use of IDEXX's test on serum or plasma. Therefore, IDEXX is correct that Jewish Hospital does not argue that the IDEXX products *are* used on serum or plasma, but rather only notes that the products *could be* used that way. *See id.;* Jewish Hospital's Br. in Supp. Summ. J. at 8 n. 6 (Docket Item 96). Consequently, I do not consider Jewish Hospital to be arguing that using the SNAP® Whole Blood test on serum and plasma infringes, but rather that the test's use on whole blood infringes.

reverse doctrine of equivalents is an affirmative defense:

> The patentee bears the burden of proving infringement by a preponderance of the evidence. Initially that burden is carried when literal infringement has been proved. When a patentee establishes literal infringement, the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents. If the accused infringer makes a *prima facie* case, the patentee, who retains the burden of persuasion on infringement, must rebut that *prima facie* case.

*SRI Int'l*, 775 F.2d at 1123–24 (citations and footnote omitted). The reverse doctrine of equivalents is a factual determination. "That fact question is simple and direct: Is the accused product so far changed in principle that it performs the function of the claimed invention in a substantially different way?" *Id.* at 1124. Following the *SRI* formula, I observe that Jewish Hospital has satisfied its initial burden by proving infringement, and that IDEXX now carries the burden of "establish[ing] the fact of non-infringement" by "mak[ing] a prima facie case." To establish that its SNAP® Whole Blood test is so far changed from the claim 11 principle that it functions in a substantially different way, IDEXX relies on its '096 patent. According to IDEXX, not only was whole blood detection not available until IDEXX discovered it, but its '096 patent protects precisely this novel detection. Thus, the factual assertions advanced by IDEXX which could go to the factfinder at trial are: (1) that IDEXX has a patent on the whole blood process; (2) that IDEXX uses this patent on whole blood; and (3) that the process works effectively on whole blood whereas claims 11 and 12 instruct users to use only serum or plasma. These facts make out a prima facie case that the '096 patented process is so substantially different in principle as to be saved from literal infringement under the reverse doctrine of equivalents.

■ At this point, Jewish Hospital, still retaining the burden of persuasion, must make its rebuttal. Jewish Hospital does not reply directly to IDEXX's assertion of this defense, other than to state that the presence of additional elements in IDEXX's process does not alone save it from literal infringement. This is not enough to rebut IDEXX's prima facie defense as a matter of summary judgment. Any substantial difference between the SNAP® Whole Blood test and that described in claims 11 and 12 is a question of fact raised by IDEXX and not sufficiently rebutted by Jewish Hospital. Therefore, whether "[d]iagnostic tests for whole blood samples represented the next generation in heartworm infection diagnostics," Hoskins Decl. ¶ 10 (Docket Item 190), as IDEXX's expert maintains, must be determined by the factfinder at trial. Having carried its burden of establishing a prima facie case on the reverse doctrine of equivalents, IDEXX has rendered summary judgment inappropriate on the whole blood product.

### CONCLUSION

In light of the fact that all of these matters of claim interpretation are clear, there is no need to hold a *Markman* hearing. Based on the foregoing, Jewish Hospital's motion for summary judgment of literal infringement is GRANTED with respect to all IDEXX products in question, except SNAP® Whole Blood; as to that product the motion is DENIED since the question of non-infringement under the reverse doctrine of equivalents raises a genuine issue of material fact.[4]

So ORDERED.

---

4. In conjunction with this motion, IDEXX submitted a statement of material facts (Docket Item 192) which raises issues not argued in its brief, namely the issue of direct infringement. Specifically, IDEXX asserts that "[t]here is no evidence that IDEXX directly carries out assays according to product instructions in its licensing procedure...." Statement by IDEXX of Material Facts in Dispute ¶ 6. By failing to proffer evidence and explain the disputed issue more fully, IDEXX has waived this argument. Its Statement

of Material Facts, without more, is insufficient to withstand summary judgment.