25 C.C.P.A.(Patents)

## In re SAMPSEL. *
### Patent Appeals No. 3943.

Court of Customs and Patent Appeals.
March 28, 1938.

*Rehearing denied April 25, 1938.

Murray, Sackhoff, Zugelter & Paddack, of Cincinnati, Ohio (Walter F. Murray, of Cincinnati, Ohio, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. .(Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner denying the patentability of two claims, numbered, respectively, 40 and 41, contained in appellant's application relating to automatic stokers, filed March 30, 1931. Four claims stand allowed. The rejected claims read:

"40. In combination a furnace, a stoker, a motor, an electric circuit for the motor, a room thermostatic switch in the circuit, and a time controlled switch in the circuit and in parallel with the room thermostatic switch.

"41. In combination a furnace, a stoker, a motor, an electric circuit for the motor, a room thermostatic switch in the circuit, a time controlled switch in the circuit and in parallel with the room thermostatic switch, and means for regulating the dura-

tion of each closing of the time controlled switch."

It will be noted that claim 41 contains the limitation, "means for regulating the duration of each closing of the time controlled switch," which does not appear in claim 40. It is conceded by counsel for appellant that this feature is old in the art, and that its inclusion in the claim does not of itself add anything to the patentability of the combination. It may, therefore, be disregarded in our discussion of the case.

The claims were rejected as being fully met by a patent, No. 1,778,349, entitled "Time Control for Stokers," issued to one Thomas H. Banfield, October 14, 1930.

■ Appellant's disclosure is quite elaborate. The specification covers eighteen printed pages and the drawings embrace sixteen figures. So far as the issue here involved is concerned, however, it is sufficient to recite that he discloses a furnace and motor-operated stoker, in the circuit of which motor there is a room thermostatic switch, designated in the drawings by the numerals 147, and another thermostatic switch adjacent the furnace designated by the numerals 143; also, in the circuit and in parallel with the room thermostatic switch there is included a switch controlled by a time device.

The pertinent disclosure of the Banfield patent is that of a motor-operated stoker, the motor having a control circuit in which there is a room thermostatic switch, designated in the drawings by the numerals 23, and a furnace thermostatic switch, designated by the numerals 24; also, in parallel with the room thermostat there is a switch operated by a time clock.

It may be said here that the purpose of the time switches in both systems, as we understand them, is to assure the continuance of fire in the stoker at times when the room temperatures are above the point at which the thermostatic switches will operate.

Comparing the application and the patent, feature by feature, it will be seen that appellant's room thermostatic switch 147 corresponds to Banfield's room thermostatic switch 23 and that each motor has a time controlled switch in its circuit in parallel with the room thermostatic switch. Structurally, these, in the final analysis, are all that the involved claims require.

However, it will be observed that the second thermostatic switch (designated by the numerals 143) mentioned in the description of appellant's system, supra, is not included in the claims, and appellant's argument with respect to his right to their allowance is predicated upon this fact.

It seems obvious that if the switch 143 was included in the claims it would be met in a literal sense by switch 24 of the patent, but the gist of appellant's contention is that his switch 143 is not actually necessary to the operation of his system, while Banfield's switch 24 is indispensable to the proper operation of that system, and the board's view of appellant's position is stated to be that since he "has omitted the switch 143 from his claims, the switch 24 of Banfield must be omitted from his apparatus in applying the patent to the claims."

Appellant insists that the Board does not correctly state his position. His own statement as given in the brief is:

"Applicant's position is this, that with the switch 143 omitted from his device he has an operative combination of elements, whereas, with the switch 24 omitted from Banfield's apparatus it is inoperative. Therefore, when applicant claims a combination in which there is no second switch such as the switch 143, he has set forth an operative device, whereas, if the switch 24 be omitted from Banfield's he has an inoperative device. Wherefore, we contend that claim 40 is not met by Banfield because if you try to apply it element by element to Banfield you get nothing but an inoperative device, that is, one that could not be made operative without the addition of another normally operative switch, namely, the boiler switch 24. It is submitted that applicant's claim 40 is patentable over Banfield, because it accomplishes the function with fewer elements than those that were necessary to the operation of Banfield."

■ A number of authorities are then cited. The pertinent purport of these authorities is the application, or statement, of the familiar rule that invention may reside, as stated in the brief of the Solicitor for the Patent Office, "in providing a device in which fewer elements are so correlated as to do the work of more elements of a prior art device."

The soundness of this rule is not questioned, but the query is whether it is applicable to the facts which here exist?

While the claims at issue do not include appellant's switch, 143, they do not in

terms exclude it. The teaching of appellant's specification with respect to this element is that it is "a normally closed thermostatic safety switch * * * adapted to operate, in the event of excessive or dangerous heat—such as might be due to failure of the room thermostat switch, or the interval contactor switch, to open the motor circuit at the proper time—to automatically open the motor circuit at a point where the other switches cannot complete the motor circuit and energize the motor to feed more fuel to the fire."

The teaching of the Banfield · patent with respect to his thermostatic switch 24 reads:

"The function of the switch 24 is to maintain a supply of heat in the reservoir or boiler 10 to meet a sudden demand."

In his statement the Examiner, after describing the portion of appellant's system here pertinent, says:

"The reference Banfield shows the same system, differing in that the control devices, that is, the time switch and the room thermostatic switch are placed in a secondary circuit, to independently operate a relay switch in the primary circuit in which the motor is included. * * *

"The only change necessary to make Banfield's system fully meet claim 40 is to place the motor in the place of the lower relay switch coil. The secondary circuit then becomes the main circuit.

"It has long been a practice in this art to use a reduced voltage circuit for the current passing through the thermostats or other sensitive control elements to avoid deterioration, but it is held that placing these in the main stoker motor circuit can not be considered patentable if it is so desired. It is nothing more than the omission of an added feature and its function. Banfield has * * * an arrangement for positively opening his motor switch by a second coil operative when the heating period is over. But this is also an added feature, not needed when there is direct operation of the motor."

Discussing appellant's argument to the effect that his omission of the switch 143 requires the omission of Banfield's switch 24 in applying the patent to the claims, the Board says:

"This method of applying references to a claim is new to us and as we view the matter, the applicant is required by law to distinguish his invention from prior art and distinctly claim the novel invention."

We are in agreement with the findings of the tribunals of the Patent Office. The appealed claims do not seem to us to be so drawn as to be unreadable upon the patent to Banfield. Upon the contrary, the situation seems to be that they read directly upon it, except for the distinction with respect to the control devices noted by the Examiner, supra, which is not claimed to be and which, in our opinion, is not a patentable distinction.

The decision of the Board of Appeals is affirmed.

Affirmed.