LINN, Circuit Judge,
concurring-in-part and dissenting-in-part.
I am pleased to join the majority opinion, with the exception of part II.B.l.a. In that part, the majority concludes that the claimed “remote interface” cannot encompass consumer-owned personal computers, thereby effectively engrafting a “publiely-accessible” limitation onto the term. E.g., Maj. Op. at 1311 (“Based upon the written description in this case, we conclude that the claim term ‘remote interface’ excludes consumer-owned personal computers.”); id. at 1312 (“The claim term ‘remote inten- *1317 face’ refers to computer equipment installed in publicly-accessible locations----”). Because I am unable to find support anywhere in the specification or prosecution history for limiting the term in this manner, I respectfully dissent.
The claims of the '007 patent broadly recite a “remote interface” for use in an automatic account processing system. E.g., '007 patent, claim 1. The only requirements imposed on the “remote interface” are that it be adapted to “allow an applicant to remotely request an account” and to “receive data from an applicant.” Id. The claim language itself does not require that the “remote interface” be publicly-accessible; in other words, it does not foreclose the use of a consumer-owned personal computer to accomplish these functions. Because the claim language places no such restriction on the scope of the claims, the question is whether, despite the broad language used, the claims should nevertheless be limited based on a disclaimer or disavowal of scope in the specification or prosecution history. The majority concedes that no such disclaimer is present in the prosecution history, Maj. Op. at 1311 n. 4, but determines that the specification is sufficient to surrender claim scope.
As the majority acknowledges, id. at 1309, “the claims of [a] patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using ‘words or expressions of manifest exclusion or restriction.’ ” Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed.Cir.2004) (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed.Cir.2002)). The majority does not point to “words or expressions of manifest exclusion or restriction” evidencing “a clear intention to limit the claim scope,” however, but instead equates the claimed “remote interface” with the preferred “kiosk” embodiment described in the specification. After making various observations about kiosks in general, see id. at 1310 (“The common meaning of the term ‘kiosk’ strongly suggests ... that the claimed remote interface is installed in a publicly-accessible location.”); id. at 1310 (“[T]he specification describes various features of the kiosk that would not be associated with consumer-owned personal computers.”), the majority concludes that one of ordinary skill would understand “remote interface” to be limited to the fundamental characteristics of kiosks.
With all due respect to my colleagues in the majority, I find this conclusion unsupportable. The majority recognizes that the kiosk is merely a “housing” for the “remote interface,” id. at 1308-09, that the “remote interface” should not be limited to the preferred “kiosk” embodiment, id. at 1308-09, and that the “remote interface” may have a different type of housing or no housing at all, id. at 1309. Nevertheless, the majority incongruously equates “remote interface” with “kiosk” to justify engrafting the “publicly-accessible” characteristic of kiosks onto the “remote interface” term. I cannot subscribe to the majority’s seemingly contradictory analysis that the “remote interface” is not limited to a “kiosk” except when it is. Compare id. at 1308-09 (“[I]t is clear that the invention is not limited to a remote interface that is housed in a kiosk structure. The patent describes the kiosk housing as merely a preferred embodiment.”), with id. at 1309 (“The remote interface is a component of the invention itself, and the inventor’s use of ‘kiosk’ in that manner does not merely describe a preferred embodiment of the invention. Rather, it describes the invention itself.”). Moreover, although the majority contends that the written description can also be read to use the term “kiosk” “to represent the entire ‘remote interface’ itself,” id., the fact re *1318 mains that the specification, in the portions cited by the majority to reinforce this proposition, simply uses “kiosk” as shorthand for both the housing and the “remote interface” contained therein. This nomenclature is unremarkable, since the sole disclosed preferred embodiment is a kiosk. See '007 patent, col. 3, 11.44-46 (“In a preferred embodiment, the user-interface is a kiosk housing a computer controller, at least one telecommunications link, a monitor or ‘touch-screen monitor’....”).
In my view, the majority’s construction, which limits the broadly-claimed “remote interface” to the characteristics of the disclosed “kiosk” embodiment, violates fundamental tenets of claim construction precedent. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (“It is a ‘bedrock principle’ of patent law that ‘the claims of a patent define the invention to which the patentee is entitled the right to exclude.’ ” (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed.Cir.2004))); Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed.Cir.1995) (en banc) (“The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.”); Cont’l Paper Bag Co. v. E. Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122 (1908) (“The invention, of course, must be described and the mode of putting it to practical use, but the claims measure the invention.” (emphasis added)); cf. McCarty v. Lehigh Valley R.R. Co., 160 U.S. 110, 116, 16 S.Ct. 240, 40 L.Ed. 358 (1895) (“[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim, and avoid a defense of anticipation, we should never know where to stop.”).
I am unable to find a clear intention to disavow consumer-owned personal computers in the written description. To the contrary, I read the specification to broadly describe an automatic account processing system which encompasses — consistent with the language of the claims — virtually any user interface that facilitates the exchange of information between the applicant and the claimed data processing system. See '007 patent, col. 2, 11.55-58 (“[T]he [loan processing] apparatus uses a computer controller and a telecommunications link, plus other electronic communications equipment, to enable the complete, automated processing of the application----”). Thus, applying the appropriate standard, the “remote interface” term should carry its plain and ordinary meaning: “a user interface located remotely from the data processing system that allows the exchange of information there between.” Because the majority fails to accord the “remote interface” term the scope to which it is entitled, I respectfully dissent from part ILB.l.a.